EVELINE P. ERRINGDALE *et al.*

*v.*

THOMAS S. RIGGS *et al.*

*Filed at Ottawa January 16, 1894.*

1. HUSBAND AND WIFE—*right of husband to wife's personal property, at common law.* It was a rule of the common law that chattels personal or money in possession of the wife at the time of her marriage at once became the property of the husband. This rule also made after-acquired personal estate coming in possession of the wife the property of the husband, unless settled as her equitable separate estate.

2. SAME—*resulting trust in favor of wife by use of her property.* A husband and wife were married in 1827 in Kentucky, and came to this State and bought land in 1834. It was claimed that the land was purchased with the money and means of the wife, and therefore a resulting trust arose in her favor: *Held,* that as any money or personal property belonging to the wife, in her possession at and from the time of her marriage to the time of the purchase of the land, had become the property of the husband, the purchase in the husband's name, with his wife's money, vested in him the absolute title, free from any resulting trust in favor of the wife.

3. SAME—*contract between husband and wife in 1854, void.* A contract between a husband and wife, made in 1854, for the division of the husband's lands, under the common law then in force, is absolutely void, and can not be specifically enforced. The rule in this respect is the same in equity as at law.

4. STATUTE OF FRAUDS—*part performance to take verbal contract out of the statute.* A husband and wife entered on land of the former in 1834, and the wife continued on the land, with her husband, until 1854, when he went to Texas leaving her in possession. At the time he left it was claimed that he made a verbal contract with her to convey her the land. She complied with the terms of the contract, and made some slight improvements on the land, which were more than compensated by the rents and profits, and during her occupancy, after her husband left, the land was assessed in his name, and no act or declaration of the wife hostile to the husband's title was shown: *Held,* that such verbal contract was within the Statute of Frauds, and could not be specifically enforced by the heirs of the wife against the husband.

APPEAL from the Circuit Court of Mercer county; the Hon. JOHN J. GLENN, Judge, presiding.

Harrison W. Riggs was married in Kentucky in 1827, and in 1834 purchased and settled on the land in controversy. In the fall of 1854 he went to the State of Texas on account of his health, with the intention of getting a home there. Some of his children who were of age went with him, and some remained on the farm with the wife. After finding a location in Texas he wrote for his children to come to Texas, and bring the mother if she would come, and gave directions about selling some mules that he had bought and sent to Illinois to defray expenses. The wife declined to go to him, and the younger children remained with her. When he left Illinois his wife remained on the farm with the household goods and part of the live stock, with ample means of support for herself and the minor children. He never returned to Illinois. Some of the children went to Texas where he was, as they became of age, and resided there; others went and remained awhile. He gave a power of attorney to one of his sons to sell and convey the two quarter sections of land that did not constitute the home place. There was a friendly correspondence between himself and the children until after the death of his wife, which occurred in December, 1891. Just after the death of his wife, Marion Riggs, one of the appellees, who lived on the farm with his mother for some fifteen or twenty years, wrote to him, asking him what should be done with the place, and asking if he might remain on it. To this the father answered, saying that he would give him a lease of it, he to take good care of it during the life of the father.

Early in the summer of 1892 Harrison W. Riggs employed an agent in Illinois to sell the half section of land in controversy. Marion Riggs offered $40 per acre for one quarter section of the land, but no sale was made. On July 18, 1892, H. W. Riggs conveyed the half section to Eveline P. Erringdale, which deed was filed for record August 24, 1892. The consideration was one dollar and past kindness in caring for him, and an agreement to support him the remainder of his

life. From the record it appears the land was assessed in the name of Harrison W. Riggs from the time he left the place until this controversy came up.

On the 6th day of August, 1892, eight of the sons of Harrison W. and Julia Riggs filed a bill of complaint against Harrison W. Riggs and the other heirs of Julia Riggs, in which it was alleged that at the time of the death of Julia Riggs she was the owner of the half section of land in controversy, which she acquired by purchase from Harrison W. Riggs in the fall of 1854, for a good and sufficient consideration, and that at the time of the sale Harrison W. Riggs neglected to make a proper deed, and prayed for specific performance of the contract; alleged that Julia Riggs went into possession of said land at the time of the sale, and continued in possession thereof until her death, paying all taxes on the same, and making improvements thereon and controlling it, and that she had many years since paid all the money and complied with all the terms of the contract; prayed for partition between the heirs of Julia Riggs. The bill was amended November 23, 1892, by making Eveline P. Erringdale a party defendant, and stating that Harrison W. Riggs conveyed the land to her since the filing of the original bill, and alleging that H. W. Riggs was not of sound mind when he made the conveyance, and that it was procured by undue influence, and prayed that it be set aside; alleged that Marion Riggs, after the death of his mother, obtained a lease to said premises from his father for the father's lifetime.

The answer of Harrison W. Riggs denies selling, or contracting to sell, the land to his wife, and denies any title or right in her except as his wife; pleads the Statute of Frauds, and alleges that the wife and husband were not capable of entering into a contract at that time; denies any undue influence by Eveline P. Erringdale to obtain a deed from him. Eveline P. Erringdale's answer was substantially the same

The amended bill was filed December 22, 1892, and stated that Julia Riggs acquired title to the real estate in controversy by purchase, upon good and sufficient consideration, the title to the same being taken in the name of Harrison W. Riggs; that Harrison W. Riggs went to Texas in the fall of 1854, and at that time there was an arrangement and division of the property owned by them; that he was to have "certain personal and real property," and the wife "certain personal property" in addition to the half section of land; that the wife was to pay each of the children that were minors, as they became of age, $100 and a horse, and that "they were to receive as good an education as the other children had received," and alleging that said conditions had long since been complied with; that the money paid for the purchase of the half section of land belonged to Julia Riggs, which she obtained from the sale of a negro slave and other property she owned in Kentucky.

Harrison W. Riggs on the same day answered the amended bill of complaint, denying all of the allegations, and disclaiming any interest in the real estate. Eveline P. Erringdale answered of the same date, denying the allegations of the bill.

On the 7th day of December, 1892, Harrison W. Riggs executed a release deed to Eveline P. Erringdale, which released her from the provisions in the deed made to her July 18, 1892, for the support of H. W. Riggs during his lifetime, and of the same date Eveline P. Erringdale executed a deed to H. W. Riggs, releasing him from his covenants of warranty in said deed of July 18, 1892.

There is no evidence in the record showing that the wife of Harrison W. Riggs ever claimed the land hostile to her husband, nor did she claim that it was paid for with her money or proceeds of her separate estate, nor does the evidence show that whilst in possession of the land she ever claimed to have a contract with her husband in reference to the same. On the hearing of the cause there was evidence introduced for the

purpose of showing the land was purchased with money, the proceeds of personal property owned by the wife before marriage, or acquired by her after marriage and before the purchase of the land. Evidence was introduced for the purpose of showing that just previous to the time H. W. Riggs left, in 1854, he made a contract with his wife by which he promised to convey the lands in controversy. The Statute of Frauds is relied on as a defense, and it is not claimed that there was any written memorandum or agreement, but the evidence is only what was stated to the witnesses by H. W. Riggs just previous to his departure for Texas. James Riggs, a son of H. W. Riggs, accompanied him to Texas, where he remained with his father until his death, and at his death he left Eveline P., his widow, and several children, with which widow and children of James Riggs, H. W. Riggs continued to make his home, the widow looking after his care and comfort, as had been the case in the lifetime of the son James. Some time after the death of James, his widow, Eveline P., married one Erringdale, and H. W. Riggs still continued a member of the family.

The court decreed a specific performance of the verbal contract, and set aside the deed from H. W. Riggs to Eveline P. Erringdale, and ordered each of them to make a deed to the heirs of Julia Riggs. From that decree this appeal is prosecuted.

Messrs. BASSETT & BASSETT, for the appellants:

By the common law, husband and wife were considered as one person, hence the rule that they could not make a valid contract as between themselves. 1 Parsons on Contracts, 345 ; Schouler on Dom. Relations, secs. 58, 59 ; *Sweeney* v. *Damron,* 47 Ill. 455 ; *Pike* v. *Baker,* 53 id. 167 ; *Hoker* v. *Boggs,* 63 id. 162 ; *Silverman* v. *Silverman,* 140 Mass. 560 ; *Kniel* v. *Egleston,* id. 202.

This rule is not founded on the doctrine that a *feme covert* could not enter into a contract, but on the doctrine that hus-

band and wife were one person, and on the ground that it was contrary to public policy that they should contract together. *Woodward* v. *Spurr*, 141 Mass. 283.

It is contended, however, that the above cases are at law, and in equity the rule is different. It is difficult to see how a contract absolutely void at law could have any force in equity, for "equity follows the law," is a familiar maxim. But the decisions in equity are as clear on the point as at law. See Story's Eq. (3d ed.) secs. 1372, 1373 ; Pomeroy's Eq. (2d ed.) secs. 945, 1121 ; *Hogan* v. *Hogan*, 89 Ill. 429 ; *Breit* v. *Yeaton*, 101 id. 263 ; *Brooks* v. *Kearns*, 86 id. 549 ; *Fowler* v. *Trebein*, 16 Ohio St. 497 ; *Woodward* v. *Spurr*, 141 Mass. 283 ; *Board of Trade* v. *Hayden*, 4 Wash. 263 ; *Lawrence* v. *Lawrence*, 14 Ore. 77 ; *Gary* v. *Kingsley*, 11 Allen, 345 ; *Townsley* v. *Chapin*, 12 id. 476 ; *Turner* v. *Nye*, 7 id. 176 ; *Ingham* v. *White*, 4 id. 412 ; *Bassett* v. *Bassett*, 112 Mass. 99 ; *Chapman* v. *Kelloggs*, 102 id. 246 ; *Merriam* v. *Barlor*, 117 id. 244 ; *Roby* v. *Phelan*, 118 id. 542 ; *Fowler* v. *Terry*, 135 id. 87 ; *White* v. *Yager*, 25 N. Y. 328.

A verbal contract, to be specifically enforced, should be clearly proved in all its terms, and should be reasonable and just. *Clark* v. *Clark*, 122 Ill. 388 ; *Long* v. *Long*, 118 id. 638 ; *Ferbrache* v. *Ferbrache*, 110 id. 217 ; *Wallace* v. *Rappleye*, 103 id. 230 ; *Koch* v. *Building Ass.* 137 id. 497.

The contract was wanting in mutuality. The husband could not have compelled the wife to do anything that it is claimed she was to do under the contract, for she did not promise to do anything. And if she had promised, in writing, to release her dower in the part of the real estate conveyed, the husband could not have enforced that promise. *Coal Co.* v. *Pasco*, 79 Ill. 164 ; *Spurck* v. *Crook*, 19 id. 415.

If the contract was not mutual, then it could not be enforced. Adams' Eq. 82, and notes ; *Sutherland* v. *Parkins*, 75 Ill. 341.

The contract was indefinite as to what kind of a deed, if any, the husband should make,—whether a deed for the life of the wife, the life of the husband, or a general warranty or quitclaim. Waterman on Specific Per. sec. 152; *O'Brien* v. *Pentz,* 48 Md. 562; *Millman* v. *Huntington,* 22 N. Y. 997; *Cox* v. *Cox,* 59 Ala. 591.

The Statute of Frauds is pleaded and relied on, and there is no evidence to take it out of the statute and support it in equity. There was no fraud on the part of Harrison W. Riggs. He had not received anything under the alleged contract. *Clark* v. *Clark,* 122 Ill. 388.

The wife has not only failed to comply with the alleged contract, in releasing dower, but in order to enforce a parol contract she must have taken possession of the land under the contract, and continued claiming under it. Fry on Specific Per. 283, 286; *Wallace* v. *Rappleye,* 103 Ill. 252; *Wood* v. *Thornly,* 58 id. 464; *Cloud* v. *Greasley,* 125 id. 314; *Truman* v. *Truman,* 79 Iowa, 506; *Recknagle* v. *Schmaltz,* 72 id. 63; Pomeroy's Eq. sec. 1409.

This she has not done. She was in possession at the time the contract was alleged to have been made, as the wife of Harrison W. Riggs. She entered into possession as his wife, and simply remained there, without claiming to be the owner in her own right. This was not a possession under the contract.

It must appear that the acts relied on as a part performance of a contract, within the Statute of Frauds, were done under the contract itself, and for the purpose of performing it, otherwise they will not operate to defeat the statute. Story lays down the rule, if they are acts which might have been done with other views, they will not take the case out of the statute, since they can not properly be said to be done by way of part performance. *Koch* v. *Building Ass.* 137 Ill. 500; *Wood* v. *Thornly,* 58 id. 469; Waterman on Specific Per. sec. 263; Story's Eq. Jur. sec. 752.

In order to establish a resulting trust, the money must have been paid at the time of the purchase. It could not become a trust by being paid after the deed was taken. (Perry on Trusts, sec. 133.) And the declarations proven to have been made by Harrison W. Riggs afterward, would not be sufficient to establish the trust. Ibid. sec. 134; *Galloway* v. *Garland*, 104 Ill. 275; *Cassell* v. *Cassell*, id. 361; *Ferbrache* v. *Ferbrache*, 110 id. 210.

Mr. JAMES M. BROCK, for the appellees:

The contract in this case can be enforced in equity, and in good conscience ought to be. *Dale* v. *Lincoln*, 62 Ill. 22; *Majors* v. *Everton*, 89 id. 56; *Hogan* v. *Hogan*, 89 id. 436; *Wormley* v. *Wormley*, 98 id. 552; *Livingston* v. *Livingston*, 2 Johns. Ch. 537; *Shepard* v. *Shepard*, 7 id. 57; *McCartney* v. *Welch*, 44 Barb. 271; *Woodworth* v. *Street*, id. 268; *Weckles* v. *Clark*, 3 Edw. Ch. 58; *Brooks* v. *Dent*, 1 Md. 523; *Bowie* v. *Stonestreet*, 6 id. 418; *Jones* v. *Jones*, 18 id. 46; *Cardill* v. *Ryder*, 35 Vt. 47.

In case Harrison W. and Julia Riggs had been other than husband and wife, there could have been no question but his agreement regarding the land would be enforced in equity. There was delivery of possession, payment, and fulfillment of all agreements on the part of Julia Riggs, and lasting and valuable improvements made. *Thornton* v. *Henry*, 2 Scam. 218; *Updike* v. *Armstrong*, 3 id. 564; *Shirley* v. *Spencer*, 4 Gilm. 583; *Hawkins* v. *Hunt*, 14 Ill. 42; *Ramsey* v. *Leston*, 25 id. 114; *Stearns* v. *Wheeler*, id. 300; *Blunt* v. *Tomlinson*, 30 id. 194; *Keys* v. *Test*, 33 id. 316; *Fitzsimmons* v. *Allen*, 39 id. 440; *Holmes* v. *Holmes*, 44 id. 168; *Northrup* v. *Boone*, 66 id. 368; *Laid* v. *Allen*, 82 id. 43; *Smith* v. *West*, 103 id. 332; *McNamara* v. *Garrity*, 106 id. 384.

Mr. JUSTICE PHILLIPS delivered the opinion of the Court:

It was a rule of the common law that chattels personal or money in possession of the wife at the time of her marriage at once became the property of the husband. This rule also made after-acquired personal estate coming to and in possession of the wife the property of the husband, unless settled upon her as her equitable separate estate. The claim in this case, that the land in controversy was purchased with money belonging to the wife, can not be sustained, as the husband and wife married in 1827 and came to this State, and purchased and made their home on this land in 1834. Any money or personal property belonging to the wife, and in possession at or from the time of her marriage to the time of the purchase of the land, having become the property of the husband under the rule of the common law, when he purchased the land and took the title to himself he took it free from any resulting trust in favor of the wife, and the title vested in him absolutely. With the title in himself, the husband and wife made their home on the land in this bill described, and continued to occupy the same from 1834 until 1854.

By the averments of the bill it is claimed that in 1854, previous to leaving for Texas, the husband and wife entered into a parol agreement, by which it was agreed that the husband should have two quarter sections of land acquired by him between 1834 and 1854, and the wife should have the farm on which they then resided. No contract or agreement is shown by the evidence in this record between the husband and wife, but that a contract was made is sought to be shown by declarations made by the husband to his sons and to others. Whether a contract was made between the husband and wife in fact can make no difference, however the method of proof. The contract sought to be proven was one made in 1854. Prior to the comparatively recent legislation in this State, a

contract between the husband and wife was absolutely void, under the rule of the common law. (*Hoker* v. *Boggs,* 63 Ill. 161; *Pike* v. *Baker,* 53 id. 163; *Hogan* v. *Hogan,* 89 id. 427.) And the common law was in force in this State at the time it is claimed this contract was made. The contract being void, the wife acquired no rights under it. The rule would be the same in equity as at law.

The Statute of Frauds was set up as a defense, and it is claimed that the wife entered into possession of the land under the contract, and complied with the terms of the contract on her part, and made improvements on the land, and that the contract was therefore an executed one on her part, and by making the improvements the bar of the statute was removed. The wife entered on the land with her husband in 1834, and continued on the land with him until he left for Texas, in 1854. When he left she remained in possession and received the rents and profits of the land, and the repairs and improvements made by her are slight in value in comparison with the rental value of the premises during her occupancy. So far as the record in this case shows, the premises were assessed for taxes in the name of the husband, and no act or declaration of the wife is shown that would be hostile to his title. She did not enter in pursuance of the contract, so that it can not be held that the bar of the statute would be removed were the contract valid otherwise.

The title to the premises being in H. W. Riggs, and no valid contract being shown that could be enforced in this proceeding, the decree of the circuit court decreeing a specific performance of the verbal contract, and decreeing H. W. Riggs and Eveline P. Erringdale should make deeds conveying the lands in controversy to the heirs of Julia Riggs, was erroneous.

The decree of the circuit court is reversed, and the cause remanded, with directions to dismiss the bill.

*Decree reversed.*