## TRACY v. COMMISSIONER OF INTERNAL REVENUE.

### HURON BLDG. CO. v. SAME.

#### Nos. 5688, 5689.

Circuit Court of Appeals, Sixth Circuit.

Nov. 3, 1931.

Geo. D. Welles, of Toledo, Ohio, for petitioners.

S. Dee Hanson, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, C. M. Charest, and J. K. Polk, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

In January, 1902, the petitioner, the Huron Building Company, acquired lot No. 251 in Port Lawrence division in the city of Toledo, Ohio, being a lot of land fronting 60 feet on Jefferson avenue, and having a depth of 120 feet. The purchase price was $45,000. In 1904 a retail store and commercial loft building was constructed on the lot at a cost of $90,940.71. On December 1, 1921, the petitioner sold these premises for the net sum of $213,340. The principal question for decision before the Commissioner and the Board of Tax Appeals related to the March 1, 1913, value to be used in computing the profit derived from the sale. The Commissioner fixed this value at $132,310.64. The Board of Tax Appeals increased it to $176,000, and, since much of the evidence was directed to the valuation of land and buildings separately, apportioned $96,000 of this sum to the land and $80,000 to the building. The Board also held that the value of the building on March 1, 1913, should be reduced by 2 per cent. depreciation, from March 1, 1913, to January 1, 1921, in computing the profit on the sale in 1921. The petitioner contends that the March 1, 1913, value should not be less than $211,000, and that the Board acted arbitrarily in fixing it at $176,000; that the conclusion of the Board was not supported by any evidence, was contrary to the evidence, and was not based upon the independent knowledge of the Board. It is also contended that the Board erred in deducting depreciation, in refusing to allow, as a proper charge to depreciation reserve, certain sums said to represent capital expenditures, and in rejecting and excluding certain evidence tendered by petitioner.

The case of Thomas H. Tracy is related to that of the Huron Building Company, in that it concerns the effect to be given a dividend of $15,000 paid to him by the Huron Building Company in 1921. Determination of the portion of such dividend which constituted a return of capital and nontaxable surplus depends upon the decision in the case of the Huron Building Company. If the decision in the case of that petitioner be affirmed, the decision of the Board of Tax Appeals in the Tracy case must likewise be affirmed.

The evidence introduced by the petitioners consisted largely of the testimony of experts, all of whom attempted to place a separate value upon the land and to arrive at the reconstruction cost of the building, less depreciation, as of March 1, 1913. This separate valuation of land and building was necessary and proper in determining the amount of annual depreciation, but is not particularly helpful in arriving at the market or sound value of a parcel of improved real estate. In such case building and land constitute a unit, the market value of which has been frequently said to be the price which one, who is under no compulsion to sell, is willing to take for the property, and which another, who is under no compulsion to buy, but is able and desires to buy, is willing to pay for the property. This price may or may not be largely influenced by reproduction costs. The type of the building, its suitability to the neighborhood in which it is located, whether construction expenditures were needlessly lavish and extravagant on the one hand, or wise and economical on the other, the earning capacity of the building as pure investment, and many other factors, also have to do with the question of value as of any specific date.

It is contended by the petitioner that the only evidence of value introduced before the Board of Tax Appeals being this opinion evidence of experts, and that which is also in its nature opinion evidence—the tax valuations of land and building, which were testified to be 60 per cent. of the true value—the Board was under obligation to accept the petitioner's valuation and to render judgment accordingly. While the opinions of experts are competent and often very helpful, such evidence is not considered binding upon the tribunal before which it is produced, at least not to the extent that such tribunal is bound to follow it, if contrary to the best judgment of its members. Anchor Co. v. Commissioner, 42 F.(2d) 99 (C. C. A. 4); Am-Plus Storage Battery Co. v. Commissioner, 35 F.(2d) 167 (C. C. A. 7). But it is true that no administrative board may act arbitrarily and without evidence, and this

suggests other questions which here arise, viz., whether there was substantial evidence before the Board to support its findings, and, if so, the effect to be given to this fact.

It must first be observed that the Board of Tax Appeals is an administrative tribunal, not a court. Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 725, 49 S. Ct. 499, 73 L. Ed. 918. The mere fact that the Board may exercise judicial, or quasi judicial, powers in the performance of its official duties, does not militate against this position. In organization and function the Board is administrative. Many, if not most, executive and administrative officers are called upon to make determination of facts in the performance of their official duties, and to apply the law as they construe it to the facts so found. In so doing they do not exercise "judicial power," as that phrase is used in the Federal Constitution and laws. Reetz v. Michigan, 188 U. S. 505, 507, 23 S. Ct. 390, 47 L. Ed. 563. The power conferred upon the various Circuit Courts of Appeals by the Act of February 26, 1926, c. 27, § 1003, 44 Stat. 110 (title 26, U. S. C., § 1226 [26 USCA § 1226]), is one of review, not of appeal. The jurisdiction conferred is to affirm, or, if the decision of the Board is not in accordance with the law, to modify or reverse, such decision. The power of review is thus almost identical in scope with that given the courts in relation to other administrative officers, boards, and commissions.

The Supreme Court has many times outlined in a comprehensive way the conditions under which administrative orders or decisions are to be considered as void and as "not in accordance with law." Thus in Interstate Commerce Commission v. Louisville & N. R. Co., 227 U. S. 88, 91, 33 S. Ct. 185, 186, 57 L. Ed. 431, Mr. Justice Lamar said: "In the comparatively few cases in which such questions have arisen it has been distinctively recognized that administrative orders, quasi judicial in character, are void if a hearing was denied; if that granted was inadequate or manifestly unfair; if the finding was contrary to the 'indisputable character of the evidence,'" citing authorities. Thus, also, in Tagg Bros. v. U. S., 280 U. S. 420, 442, 50 S. Ct. 220, 225, 74 L. Ed. 524, it is said: "It has been settled in cases arising under the Interstate Commerce Act [49 USCA § 1 et seq.] that, if an order rests upon an erroneous rule of law, Interstate Commerce Commission v. Diffenbaugh, 222 U. S. 42, 32 S. Ct. 22, 56 L. Ed. 83, or is based upon a finding made without evidence, Chicago Junction Case, 264 U. S. 258, 263, 44 S. Ct. 317, 68 L. Ed. 667, or upon evidence which clearly does not support it, Interstate Commerce Commission v. Union Pacific R. R. Co., 222 U. S. 541, 547, 32 S. Ct. 108, 56 L. Ed. 308; New England Divisions Case, 261 U. S. 184, 203, 43 S. Ct. 270, 67 L. Ed. 605; Colorado v. U. S., 271 U. S. 153, 166, 46 S. Ct. 452, 70 L. Ed. 878, the order must be set aside. These rules are applicable also to suits arising under the Packers and Stockyards Act [7 USCA § 181 et seq.]." On pages 443 and 444 of 280 U. S., 50 S. Ct. 220, 226, the opinion continues: "The validity of an order of the Secretary, like that of an order of the Interstate Commerce Commission, must be determined upon the record of the proceedings before him —save as there may be an exception of issues presenting claims of constitutional right, a matter which need not be considered or decided now. [Citing authorities.] On all other issues his findings must be accepted by the court as conclusive, if the evidence before him was legally sufficient to sustain them and there was no irregularity in the proceeding."

But, whatever doubt there may have been as to the extent to which courts will accept the findings of fact of the Board of Tax Appeals, such doubts are laid at rest by the decision in the case of Phillips v. Commissioner, 283 U. S. 589, 600, 51 S. Ct. 608, 75 L. Ed. 1289. There objection was specifically raised to the rule under which the Board's findings of fact are treated by the Circuit Courts of Appeals as final if there is any evidence to support them (page 599 of 283 U. S., 51 S. Ct. 608, 612). This objection was said to be without weight, the court, by Mr. Justice Brandeis, saying: "It has long been settled that determinations of fact for ordinary administrative purposes are not subject to review. [Citing authorities.] Save as there may be an exception for issues presenting claims of constitutional right, such administrative findings on issues of fact are accepted by the court as conclusive if the evidence was legally sufficient to sustain them and there was no irregularity in the proceedings."

We assume, therefore, that the court may, and should, in every case in which a hearing was had and evidence was introduced before the Board, look into such evidence to determine whether it was "legally sufficient to sustain" the findings made. The court need go no further. It is not required to weigh the evidence, or to determine the credibility of witnesses; nor may it usurp the power of administrative decision. The opinion of the

court may not be substituted for that of the administrative body in matters involving the exercise of judgment or discretion. Compare Interstate Commerce Commission v. Illinois Central R. Co., 215 U. S. 452, 470, 30 S. Ct. 155, 54 L. Ed. 280. The analogy to an appeal in equity, suggested but not adopted in our decision in Collin v. Commissioner, 32 F.(2d) 753, cannot now be considered a close one. The question of the March 1, 1913, value of property is a question of fact, and a decision of this sort reached by the taxing officer or board within the scope of the authority conferred by law, when made in good faith, and in the absence of gross mistake or other irregularity, has long been held by the courts as conclusive. Cf. Hagerty v. Huddleston, Hubbard & Co., 60 Ohio St. 149, 165, 166, 53 N. E. 960. This is but another way of saying that the decision of the taxing board must prevail if it is not contrary to the "indisputable character of the evidence" or if the evidence is "legally sufficient to sustain" such finding. The evidence is legally sufficient to sustain the finding if there be substantial evidence to support it, and the record as a whole does not clearly, convincingly, or even possibly, "indisputably" require a contrary conclusion. This is not inconsistent with our previous decisions. Compare Cartier v. Commissioner, 37 F.(2d) 894; C. F. Medaris Co. v. Commissioner, 38 F.(2d) 812; and Guarantee Bond & Mortgage Co. v. Commissioner, 44 F.(2d) 297. Further citations seem unnecessary.

 The Board of Tax Appeals did not act without evidence or without full opportunity to the petitioners to be heard. Such Board accepted the petitioner's evidence as to the independent or separate valuation of the land. The Board had before it not only the cost of the land in 1902, the cost of constructing the building which was completed in 1904, the tax values of land and building in 1913 and 1915, and the opinions of the experts as to the separate valuations to be placed on both, but the record is devoid of any evidence of sales of closely comparable buildings, or of the value of the property as a unit and for investment purposes. The burden of producing such evidence, if it was to be determinative of the case in whole or in part, was upon the petitioner. In connection with investment value, also, earning power is of the greatest importance. Prior to 1913 such earnings ranged between $5,699.08, in 1910, and $2,361.54, in 1912. The maximum earnings prior to 1922 were for the year 1920 $7,845.12. For the ten years commencing with 1908, the average was approximately $5,000 per year. This is a return of but 2.8 per cent. upon the valuation of $176,000. The Board also had before it that which is common statistical knowledge —the tremendous increase in the price of building materials, equipment, and the like, which followed the beginning of the World War in 1914, as well as the lower cost of labor at or about that time, and comparative costs in 1904, 1914, and 1921. The weight to be given to each of these elements of evidence was within the sound discretion of the Board, and we cannot say that such discretion was abused, that the evidence was not legally sufficient to sustain the Board's decision, or that such evidence clearly showed a value in excess of that fixed by the Board.

 In view of the decision of the Supreme Court in United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 71 L. Ed. 1054, the petitioners do not here press the claim that depreciation was improperly deducted from the March 1, 1913, value found, in arriving at the profits resulting from the sale. Depreciation is largely dependent upon the fact that buildings are known to become obsolete and of greatly decreased value, or even worthless, after the passage of many years. The extent of such depreciation depends upon a variety of factors, and the rate to be applied in any individual case lies largely within the sound discretion of the Commissioner and the Board of Tax Appeals. We cannot say that the rate of 2 per cent. per annum, fixed by the Board, is so clearly wrong as to be arbitrary or as to constitute an abuse of discretion. Nor can we say that the amounts claimed as capital expenditures or credit against such depreciation were not properly classified by the Board as general maintenance and repair. They were so treated by the petitioner in its books, and, we assume, in its annual income tax returns. Upon these questions, therefore, the findings of the Board of Tax Appeals are also affirmed.

 The petitioner complains that the Board of Tax Appeals erred in a matter of law in rejecting evidence tendered by the petitioner to show the general development in the immediate vicinity of the building in question between the years 1913 and 1921. This, it is claimed, would have tended to show a greater stability in market value during that period and that practically all of the increase occurred prior to 1913. While the evidence might have some slight effect in this direction, the probative force would

be inconsequential. Conceding the truth of the proffer, but without admitting the necessity or propriety of the inference to be drawn from such evidence, we cannot see that a different result would be required.

The respondent questions the jurisdiction of the court in the matter of the petition of Thomas H. Tracy upon the ground that such petition was not filed within six months after the decision of the Board of Tax Appeals. This petitioner contends that the decision in his case was entered of record by the Board of Tax Appeals on May 25, 1929, by inadvertence and mistake, and in violation of the stipulation between the parties, and that the board erred in denying petitioner's motion to vacate and set aside its earlier decision and to enter a nunc pro tunc order as of July 8, 1929. Since, as has already been stated, relief in this case is dependent upon relief in the matter of the petition of the Huron Building Company, it becomes unnecessary for us to determine this question. We accept jurisdiction and affirm the decision rendered by the Board.

The decision of the Board of Tax Appeals is affirmed in both cases.