### COMMISSIONER OF INTERNAL REVENUE v. HALE.
### No. 2790.

Circuit Court of Appeals, First Circuit.

Nov. 10, 1933.

John MacC. Hudson, Sp. Asst. Atty. Gen. (Pat Malloy, Asst. Atty. Gen., and Sewall Key, Sp. Asst. Atty. Gen., on the brief), for the Commissioner of Internal Revenue.

Harvey Bundy, of Boston, Mass. (Haskell Cohn, of Boston, Mass., on the brief), for Richard W. Hale.

Before WILSON and MORTON, Circuit Judges, and HALE, District Judge.

WILSON, Circuit Judge.

This is a petition for a review of a decision of the Board of Tax Appeals. On October 23, 1926, the appellee wrote the following letter to his wife, Mary Newbold Hale:

"Dear Mary: I wish to sell you the following shares in the Moa Bay Iron Company, and to be quite frank about the purpose and make this record of the whole matter.

"I sell you these shares with no string. They cease to be mine and become yours. Thus I establish a loss for income tax purposes.

"I fix the price at $1.25 per share. There is no one known to me who would pay that or more. The market has been tested in the auctions by others. Also there have been other sales on this basis or nearly so. While the stockholders have great hopes, those hopes are not reflected in the price obtainable, but only—as here—in making the seller wish to have the purchaser some one whose good fortune would be agreeable."

In reply his wife wrote the following letter:

"Dear Richard: In reply to your letter of October 23rd, I enclose cheque for $1,250 in payment for the shares in the Moa Bay Iron Company.

"Yours very truly,
        "Mary Newbold Hale."

The appellee cashed the check of his wife and sent the certificate of stock to the transfer agent of the Moa Bay Iron Company and paid for the necessary revenue stamps for the transfer amounting to $20, and received new shares issued in the name of his wife,

which were delivered to the wife in pursuance of the agreement of sale.

It is alleged in the petition to the Board of Tax Appeals that the wife had sufficient property in her own right to pay for the stock, and paid for it out of her own funds, which is not denied.

The appellee, when he purchased the stock in 1916, paid therefor the sum of $25,-000. The difference between the cost, plus the sum paid for revenue stamps, and the selling price, represented a loss of $23,770, which the appellee claimed as a deduction in filing his income tax for 1926. The Commissioner refused to allow the deduction and assessed a deficiency tax of $3,146.70.

The appellee petitioned the Board of Tax Appeals for a redetermination of his tax and the board found the facts as above stated, and that the sale was a bona fide transaction, and any benefits thereafter from an increase in the value of the stock would accrue to Mrs. Hale and not to her husband, and held that the appellee was entitled to deduct the loss.

■ The government relies on section 2 of chapter 209 of the General Laws of Massachusetts 1921, which provides that a married woman may make contracts, oral, written, sealed, and unsealed, in the same manner as if she were sole, except she shall not be authorized to make contracts with her husband.

It is urged by counsel for the appellee that a completed sale from the husband to the wife for a valuable consideration is valid, at least in equity; that it is only executory contracts which are void. No Massachusetts decision has been called to our attention as actually decisive of this question.

In general, at common law, the husband upon marriage took a freehold interest in the real estate of his wife, and personal property in her possession at the time of marriage or coming into her possession during marriage, became the property of her husband absolutely, unless conveyed to her separate use. The Massachusetts Legislature has from time to time enlarged the rights of married women, and under chapter 209 of the General Laws 1921 of Massachusetts, she may now in that commonwealth receive, hold, and manage property, both real and personal, apart from her husband; may contract with any one except her husband, and make gifts to or receive gifts of personal and conveyances of real property from her husband to the same extent as if she were sole.

At common law a conveyance of personal property by a husband to the wife could have had no effect. Such a conveyance would have been futile, since all her personal property in her possession became his. Section 1 of chapter 209, G. L. Mass., however, has changed this, and she may now acquire and hold personal property apart from her husband and in her own right.

The statement in Porter v. Wakefield, 146 Mass. 25, 27, 14 N. E. 792, that transfers of property and contracts made directly between husband and wife are void is not decisive of the issue now under consideration so far as the transfer of property is concerned. At the time of this decision, section 3 of chapter 147, Pub. Stat. (section 3, chap. 153, R. L. 1902) had not been repealed. The issue in this case involved a pledge of jewelry previously given to the wife, when such gifts under chapter 132, P. L. 1884 (section 3, chap. 153, R. L. 1902) were authorized to an excess of the value of the jewelry involved, and the fact that the Massachusetts courts had held that an executory contract between husband and wife was void, was alone decisive of the case.

While the Massachusetts Supreme Court has repeatedly held that simple contracts between husband and wife are void and cannot be enforced, either in law or in equity, Gahm v. Gahm, 243 Mass. 374, 137 N. E. 876; Giles v. Giles, 279 Mass. 284, 181 N. E. 176, in which cases many other Massachusetts cases are cited to the same effect, it has not been decided since 1920 that a wife cannot, under section 1, chap. 209, as against her husband, hold personal property purchased of her husband and delivered into her possession and paid for at its full value out of her separate estate, which is the issue now before this court.

Until 1912, under chapter 132, P. L. 1884 (R. L. Mass. chap. 153, § 3), transfers between husband and wife were not authorized; but gifts from the husband to the wife within certain limits were permitted. Chapter 304, P. L. 1912, permitted conveyances of real estate; and by chapter 478, P. L. 1920, section 3 of chapter 153, R. L. 1902, which provided that transfers between husband and wife were not authorized under sections 1 and 2, was repealed, and in the revision of 1921 chapter 304 of the Public Laws of 1912, and chapter 478 of the Public Laws of 1920 were combined in section 3, as it now appears in chapter 209, G. L. 1921. Since the provision in section 3, chapter 153, R. L. 1902, stating that the provisions of sections 1 and 2 of said chapter shall not authorize a con-

veyance between husband and wife, was entirely repealed in 1920, the inference is that sections 1 and 2 were thereafter to have full effect. It would seem to be a fair inference that while under the act of 1884 a married woman might not hold property if transferred direct from her husband, there was no longer, after the act of 1920, any prohibition against it, once she had acquired title to it, though an executory contract between them to convey property was, under section 2, still void and could not be enforced, unless attended with some "equitable considerations."

The federal courts and the courts of other states under similar statutes prohibiting suits between husband and wife, have held that a transfer of property from a husband to a wife for a consideration paid from her separate property vests a title in her which a court of equity will protect. Wallingsford v. Allen, 10 Pet. 583, 594, 9 L. Ed. 542; Sykes v. Chadwick, 18 Wall. 141, 21 L. Ed. 824; English v. Brown (D. C.) 219 F. 248; English v. Brown (C. C. A.) 229 F. 34; Erringdale v. Riggs, 148 Ill. 403, 412, 36 N. E. 93; Going v. Orns, 8 Kan. 85; Garwood v. Garwood, 56 N. J. Eq. 265, 38 A. 954.

Also see Holmes v. Winchester, 133 Mass. 140, Atlantic National Bank v. Tavener, 130 Mass. 407, Lombard v. Morse, 155 Mass. 136, 29 N. E. 205, 14 L. R. A. 273, Frankel v. Frankel, 173 Mass. 214, 53 N. E. 398, 73 Am. St. Rep. 266, English v. English, 229 Mass. 11, 118 N. E. 178, for instances in which the Massachusetts court has protected the rights of the wife in a suit in equity against the husband.

The trend of judicial decisions is to interpret liberally the acts relating to removal of the common law disabilities of married women.

The Massachusetts court in Holmes v. Winchester, supra, sustained the right of the wife to sue her husband in equity, where she had given up certain valuable rights to which she was entitled in law, viz.: her dower interest in land, in consideration of her husband's promise to convey to her shares of stock in a corporation. The court enforced this agreement in equity upon the ground that the husband, after the release of dower, held the shares of stock under the agreement as trustee for the wife. This case has not been overruled, but has in effect been affirmed in the recent cases of Crosby v. Clem, 209 Mass. 193, 195, 95 N. E. 297; Federal National Bank of Boston v. Gaston, 256 Mass. 471, 475, 152 N. E. 923.

In James v. Gray, 131 F. 401, 1 L. R. A. (N. S.) 321, Tucker v. Curtin, 148 F. 929, this court held that in the administration of the bankruptcy act it was not bound by the decisions of the local courts in relation to transfers of property between husband and wife; but might apply the chancery rules recognized in the federal courts, proceedings in bankruptcy being conducted according to the principles of equity.

But even under decisions of the Massachusetts court and the statutes of that commonwealth, we think that the title to the shares of stock has passed beyond the appellee's control under the circumstances shown to exist in this case. He has received full value therefor and from his wife's separate property. She has a right to hold shares of stock in her own right, free of any control by her husband. He retained no beneficial interest in the property. There was no intent that she should hold the shares as trustee for him; he expressly stipulated that they were to be conveyed absolutely and unconditionally; no fraud or coercion was practiced on either. We think the shares of stock may be treated as though conveyed to her separate use.

Having thus acquired the property for full value, we think she may hold it under section 1 of chapter 209, G. L. Mass., unless the husband can show some equitable considerations by reason of which he is entitled in equity to recover it, and the record disclosed no such equitable considerations. He has sustained an actual loss by the transfer as fully as though he had conveyed it for the same sum to a stranger.

The mere fact that the transfer was made by the appellee for the avowed purpose of reducing his income tax does not render it invalid, when the sum received was equal to what could otherwise be obtained from other parties, as in this case. Wiggin v. Commissioner of Internal Revenue (C. C. A.) 46 F.(2d) 743, 745, 746; Bullen v. State of Wisconsin, 240 U. S. 625, 36 S. Ct. 473, 60 L. Ed. 830.

To hold such transfers are valid to create deductible losses in computing income taxes may furnish opportunity for fraud upon the government, and courts will require clear proof that the transaction was bona fide and not a subterfuge, and that full value was paid; but when, as in this case, it is conceded that full value was paid and from the separate property of the wife, we think a deductible loss occurred under section 214

564

(a) (5) of the Revenue of 1926, 26 USCA § 955 (a) (5).

The decree of the Board of Tax Appeals is affirmed.