## SLAYTON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2950.

Circuit Court of. Appeals, First Circuit.
March 26, 1935.

MORTON, Circuit Judge, dissenting.

———◆———

Lee M. Friedman, of Boston, Mass., and H. H. Shinnick, of Washington, D. C. (Edward Clifford, of Washington, D. C., and Edward F. Messinger and Friedman, Atherton, King & Turner, all of Boston, Mass., on the brief), for petitioner.

Lucius A. Buck, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and James W. Morris, Sp. Asst. to Atty. Gen., on the brief), .for Commissioner of Internal Revenue.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is a petition by a taxpayer for a review of a decision of the Board of Tax Appeals under section 1003 (a) (b) of the Revenue Act of 1926 (26 USCA § 1226 (a, b). It involves a deficiency tax for the year 1928. The deficiency tax was assessed by reason of a refusal by the Commissioner to allow a deduction for a loss of approximately $139,000, due to an alleged sale by the taxpayer of 1,500 shares of stock in the Hoyt Shoe Company. The stock at the time of sale was represented by trust certificates which were transferable. They were a part of a large issue of such certificates which had been issued at the request of bankers, who had in 1927 advanced to the shoe company large sums of money and taken over the management of the company, which at the time was financially embarrassed. Both Mrs. Slayton and her husband held other stock in the company than the shares, the transfer of which has given rise to this controversy.

The Commissioner, upon a report of the facts connected with the sale by the deputy collector as a result of an examination of the taxpayer's return and an investigation of the alleged sale by a federal revenue agent, disallowed the deductions on the ground that no bona fide sale was made. The Board of Tax Appeals affirmed his finding.

The eighteen assignments of error in her petition for review may be summarized as follows: That the Board erred in finding that no bona fide sale took place, that its findings do not support its judgment, and that the Board erred in not basing its conclusion on facts supported by "undisputed testimony."

█ The Board of Tax Appeals is not a court. It is an executive or administrative board, upon the decision of which the parties are given an opportunity to base a petition for review to the courts. Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 725, 49 S. Ct. 499, 73 L. Ed. 918. On review, the courts may modify or reverse a decision of the Board only when it is not in accordance with law.

In speaking of the scope of review of administrative boards, the Supreme Court in Phillips v. Commissioner, 283 U. S. 589, 600, 51 S. Ct. 608, 612, 75 L. Ed. 1289, said:

"It has long been settled that determinations of fact for ordinary administrative purposes are not subject to review. * * * Such administrative findings on issues of fact are accepted by the court as conclusive if the evidence was legally sufficient to sustain them and there was no irregularity in the proceedings."

In Tagg Bros. & Moorhead et al. v. United States et al., 280 U. S. 420, 442, 50 S. Ct. 220, 225, 74 L. Ed. 524, the court said:

"It has been settled in cases arising under the Interstate Commerce Act [49 US CA § 1 et seq.] that, if an order rests upon an erroneous rule of law, Interstate Commerce Commission v. Diffenbaugh, 222 U. S. 42, 32 S. Ct. 22, 56 L. Ed. 83, or is based upon a finding made without evidence, Chicago Junction Case, 264 U. S. 258, 263, 44 S. Ct. 317, 68 L. Ed. 667, or upon evidence which clearly does not support it, Interstate Commerce Commission v. Union Pacific R. Co., 222 U. S. 541, 547, 32 S. Ct. 108, 56 L. Ed. 308; New England Divisions Case, 261 U. S. 184, 203, 43 S. Ct. 270, 67 L. Ed. 605; Colorado v. United States, 271 U. S. 153, 166, 46 S. Ct. 452, 70 L. Ed. 878, the order must be set aside."

In Interstate Commerce Commission v. Louisville & Nashville R. Co., 227 U. S. 88, 91, 33 S. Ct. 185, 186, 57 L. Ed. 431, the court said: "In the comparatively few cases in which such questions have arisen it has been distinctly recognized that administrative orders, quasi judicial in character, are void if a hearing was denied; if that granted was inadequate or manifestly unfair; if the finding was contrary to the 'indisputable character of the evidence' (Tang Tun v. Edsell, 223 U. S. [673] 681, 32 S. Ct. 359, 56 L. Ed. [606], 610; Chin Yow v. United States, 208 U. S. [8] 13, 28 S. Ct. 201, 52 L. Ed. [369] 370; Low Wah Suey v. Backus, 225 U. S. [460], 468, 32 S. Ct. 734, 56 L. Ed. [1165] 1167; Zakonaite v. Wolf, 226 U. S. 272, 33 S. Ct. 31, 57 L. Ed. 218), or if the facts found do not, as a matter of law, support the order made."

In Tracy v. Commissioner, 53 F.(2d) 575, 578, the Circuit Court of Appeals for the Sixth Circuit, in interpreting the decisions of the Supreme Court, well said:

"We assume, therefore, that the court may, and should, in every case in which a hearing was had and evidence was introduced before the Board, look into such evidence to determine whether it was 'legally sufficient to sustain' the findings made. The court need go no further. It is not required to weigh the evidence, or to determine the credibility of witnesses; nor may it usurp the power of administrative decision. * * * The analogy to an appeal in equity, suggested but not adopted in our decision in Collin v. Commissioner, 32 F.(2d) 753, cannot now be considered a close one. The question of the March 1, 1913, value of property is a question of fact, and a decision of this sort reached by the taxing officer or board within the scope of the authority conferred by law, when made in good faith, and in the absence of gross mistake or other irregularity, has long been held by the courts as conclusive. Cf. Hagerty v. Huddleston, Hubbard & Co., 60 Ohio St. 149, 165, 166, 53 N. E. 960. This is but another way of saying that the decision of the taxing board must prevail if it is not contrary to the 'indisputable character of the evidence' or if the evidence is 'legally sufficient to sustain' such finding. The evidence is legally sufficient to sustain the finding if there be substantial evidence to support it, and the record as a whole does not clearly, convincingly, or even possibly, 'indisputably' require a contrary conclusion."

In order to reverse the Board of Tax Appeals under section 1003 (b) of the 1926 act, because it is contrary to law, it must appear that the Board has found the facts on which its decision rests, without any substantial evidence to support its findings; or it has denied the taxpayer a fair hearing, either by refusing to receive relevant and material evidence or by other arbitrary proceedings; or has erred as a matter of law in the conclusion it reached from the ultimate facts founds. A fact found contrary to "indisputable evidence" or without "legally sufficient evidence" is only another way of saying that the finding was without substantial evidence to support it.

It is urged, because the taxpayer in this case testified that, acting upon her husband's advice, she indorsed the certificate of stock in question, and authorized her husband to deliver it to some broker for sale at a price established by her husband, and that she did not know her son had bought it until her husband told her and asked her if she was willing to give her son the money to pay for it, which she did, and because her son corroborated this testimony, and the gov-

ernment presented no witness who disputed it, a finding that the sale was not bona fide was contrary to the "undisputed evidence" and without any evidence to support it, and was therefore erroneous in law. Oral testimony may be "undisputed," but may not from all the evidence in the case constitute "indisputable evidence."

██ There are some unusual features to this case which we think warranted the Board in arriving at the conclusion it did. It was not an open, direct sale to a member of the family, as in Commissioner v. Hale (C. C. A.) 67 F.(2d) 561, in which the purchase was made after sales in the open market, and paid for out of the independent means of the purchaser.

To determine whether the Board's conclusion had support in the evidence, it is necessary to have a clear understanding of the situation of the parties at the time of transfer to the son. The husband, Hovey E. Slayton, became connected with the Hoyt Shoe Company in 1903, and, after the death of his wife's father, who organized the company, Mr. Slayton became its president, treasurer, and general manager. It met financial reverses in 1927, and the management was taken over by a banking house which has advanced large sums of money to enable it to continue. Mr. Slayton then organized a corporation known as the Slayton-Learoyd Company to take over the sale of the trust shares in the Massachusetts Investors Trust, the agency for which had formerly been handled by the Learoyd, Foster & Co., a brokerage house dealing in these shares and in other stocks.

The son, after graduating from college, worked for a time for the Hoyt Shoe Company, and in August, 1928, was employed or was connected with Learoyd, Foster & Co., and on November 1, 1928, was employed by the Slayton-Learoyd Company, of which his father was an officer, and which occupied the same offices as Learoyd, Foster & Co.

Mrs. Slayton knew little about the business of the Hoyt Shoe Company, except as she was told by her husband. Her transfer of the stock was at his suggestion, and from her testimony he clearly acted as her agent in arranging for the transfer of the shares.

It is significant that the alleged sale was not made direct to the son. Mrs. Slayton apparently did not know to what brokerage house the certificate was given for sale. The husband arranged it all. The son's ac-

count of his alleged purchase of the stock was as follows: "I can explain how I came to go to E. M. Hamlin & Co. to buy the securities. When I first spoke to father about buying the stock, I knew that he was anxious to establish it as a tax loss, and I said I was willing to buy the stock at its fair value, which he set on it, and I made arrangements with Learoyd, Foster & Company to find out where I could take care of that stock, to pick it up as I should, in a legal way, and I left the matter at that time entirely up to them."

Of course, both the father and son knew where it could be "picked up." No adequate reason appears why the son could not have dealt directly with E. M. Hamlin & Co. and borrowed the money of Slayton-Learoyd Company, in which his father was an officer and he was an employee, or his father and mother at the outset could not have given him the money to purchase the stock, except it would not then have had the appearance of a bona fide sale. We think the Board was warranted in finding from the testimony that, while Mrs. Slayton did not know at the time of the sale that arrangements had been made by the husband for the son to buy, she intrusted the entire transaction to her husband to carry it out as her agent, and as a matter of law his knowledge was hers as were his acts. The Board may well have found that the father, through E. M. Hamlin & Co., who sold a like amount of the stock to the son at the same time, delivered his and his wife's certificates to E. M. Hamlin & Co., and that the son, who conferred with the father with reference to the transaction, knew perfectly well where they could be "picked up" when he intrusted the deal to Learoyd, Foster & Co.

Within two weeks of the sale the money was given to the son by Mrs. Slayton to pay for her stock, or to discharge his loan, and before the end of the next year the son returned to each parent without consideration the same shares he had acquired in this manner. It was not necessary for the Board to find that the testimony of Mrs. Slayton, or that of the son, was or was not truthful, and the testimony of counsel has little, if any, bearing on the issue here.

The wife naturally relied on her husband; the husband was advised that by a sale a deductible tax loss could be created. He attempted to perfect it, but from the indirect course taken to bring it about, together with the admitted fact that Mrs.

Slayton gave the son the money for the stock, who within a year returned the stock to her without any consideration, furnished substantial evidence from which the Board could find that no bona fide sale was made. It cannot be said that there was no evidence to support the findings of the Board or that it was so arbitrary as to constitute a denial of due process, or was arrived at against "indisputable testimony," or that the conclusion of the Board from the facts found was not warranted in law.

The actual facts and not form is the determining factor in these cases. See Gregory v. Helvering, Commissioner, 293 U. S. 465, 55 S. Ct. 266, 79 L. Ed. ——, decided by the Supreme Court January 7, 1935, involving an alleged bona fide reorganization of a corporation to reduce taxation.

The decision of the Board of Tax Appeals is affirmed.

MORTON, Circuit Judge (dissenting).

It seems to me that the statement in the opinion of the circumstances under which findings of fact by the Board of Tax Appeals will be disregarded or revised is too restricted. It is certainly contrary to the view which prevails in the Second and Fourth Circuits (Jewett v. Commissioner, 61 F.(2d) 471 (C. C. A. 2); Commissioner v. Dyer, (C. C. A. 2) 74 F.(2d) 685; Mead Coal Co. v. Commissioner, 72 F.(2d) 22 (C. C. A. 4); and it appears to be inconsistent with the way in which analogous questions have been dealt with by the Supreme Court for a number of years. Our own opinions have not been consistent in the language in which the rule has been stated; it would serve no useful purpose to discuss them. But the test which we have actually applied has, I think, been practically uniform and far broader than that laid down in the majority opinion. In Gregory v. Helvering, 293 U. S. 465, 55 S. Ct. 266, 268, 79 L. Ed. ——, the question was whether a purported reorganization of a corporation was real and bona fide, or was a colorable pretense made in order to evade taxation. The Board of Tax Appeals held that the reorganization was real; the Circuit Court of Appeals in the Second Circuit held that the reorganization was fictitious. On certiorari the Supreme Court said: "In these circumstances, the facts speak for themselves and are susceptible of but one interpretation." It held that "The whole undertaking * * * was *in fact* an elaborate and devious form of conveyance masquerading as a

corporate reorganization, and nothing else." (Italics supplied.) The complicated facts of the alleged reorganization were re-examined both in the Circuit Court of Appeals and in the Supreme Court in a manner practically like an appeal in equity; the findings of the Board of Tax Appeals were reversed. There was no suggestion in the opinion in either court that the review was limited to questions of law or that re-examination of the facts was not open. Nor was any such contention made by the commissioner; in that case he was the appealing party. In Interstate Commerce Commission v. Louisville & Nashville R. Co., 227 U. S. 88, 91, 33 S. Ct. 185, 187, 57 L. Ed. 431, it was said that a finding by an administrative tribunal *"contrary to the 'indisputable character of the evidence'"* would be set aside. I understand that to be still law and to be applicable to decision of the Board of Tax Appeals. It obviously requires an examination of the evidence, as was in fact done in the Gregory Case, and in the other cases cited, to determine whether the "indisputable character" of it had been ignored. The statement in the opinion in the Phillips Case, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289, as to the legal sufficiency of evidence, is to be read in the light of previous and subsequent decisions. There is no question but what findings of the Board of Tax Appeals carry great weight and ought not to be set aside unless shown to be "contrary to the indisputable character of the evidence," which is probably a somewhat heavier burden of proof than is described by the expression, "clearly wrong." There is little help in chopping words. No decision with which I am familiar has laid down nearly as narrow a test as that in the majority opinion that, viz., that "the courts may modify or reverse a decision of the Board only when it is not in accordance with law." Even in the Tracy Case (C. C. A.) 53 F.(2d) 575, 579, relied on in the majority opinion, the court said: "The evidence is legally sufficient to sustain the finding if there be substantial evidence to support it, and the record as a whole does not clearly, convincingly, or even possibly, 'indisputably' require a contrary conclusion"—which is very different from the rule stated in the opinion.

The test stated in the Louisville & Nashville Case, supra, has in effect been used in this and other circuits for a number of years. It seems to me a very good one. It has worked well—on the one side not opening the courts so widely that appeals from administrative decisions have become an

abuse, and on the other side protecting the individual and the government against arbitrary or eccentric decisions by such Boards. It is in my judgment very unwise at the present time to narrow or weaken this established rule, which I am confident has been of great practical benefit.

As to the facts in this particular case, I can only say that the testimony of Mrs. Slayton and her son appears to me on the record, as it did to the member of the Board who heard them testify, to be that of truthful witnesses. No fact was shown which contradicted it or was inconsistent with it. If true, it explained the appearance of fraud which the circumstances bore, in a manner consistent with honesty and good faith. Transactions which appear to be honest and above board sometimes upon examination prove to be quite otherwise; and the converse is equally true, circumstances which arouse suspicion of crime or of fraud sometimes turn out to be in that respect deceptive and misleading.