ARTIS C. BRYAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 23928.   Promulgated May 7, 1951.

*F. Robert Gilfoil, Jr., Esq.*, for the petitioner.
*Clay C. Holmes, Esq.*, for the respondent.

974

976

**OPINION.**

RICE, *Judge:* The petitioner claims that the 1972 shares of stock which he received from Durston were a gift and that he is entitled to the donor's basis of $170,205; and that, since he sold them for less than that amount, no gain or loss is recognizable. Respondent, on the other hand, claims that said shares were not a gift because they were received by petitioner for an adequate consideration; that, consequently, the basis for computing gain or loss thereon was the fair

market value of said shares when received; and that said shares were received for tax purposes on January 7, 1935, when Durston executed the document set out in our findings of fact.

Petitioner disposed of the 1972 shares at a price of $83 a share, or a total of $163,676, less $1,586.36 as the cost of the sale. Respondent therefore computed a gain of $158,145.64 on the sale, and took 50 per cent thereof, or $79,072.82, into account under section 117 (b) of the Internal Revenue Code. In making such computation, respondent used a fair market value of $2 per share as set forth in petitioner's income tax return for 1944.

A study of the document executed by Durston on January 7, 1935, seems to us conclusively to dispose of the gift issue. The corporation had an indebtedness of $150,000 for which Durston was personally liable. The business of the corporation had not been sufficient to pay its operating expenses and reduce the said indebtedness. Durston had not been active in the management of the corporation and recited in the document that he wished to be relieved of the management thereof. He also desired to be relieved of his obligation on the note and he stated that he believed it could be accomplished under the management of petitioner. He then stated that in consideration of $1 and other valuable consideration "I hereby sell, assign, transfer and set over unto A. C. Bryan all my right title and interest in and to 2540 shares of the capital stock of the Durston Gear Corporation and I hereby constitute and appoint said A. C. Bryan my true and lawful attorney to transfer said shares upon the books of said corporation with full power of substitution in the premises, *provided, however, that this assignment is given upon the following terms and conditions:* * * *."  (Emphasis added.)

One of the conditions was that petitioner would not be entitled to any of such shares of stock unless and until the amount of the bank indebtedness was reduced. If it were reduced by $25,000, he was to get the whole 2540 shares. If it were reduced in a smaller amount, he would be entitled to receive a smaller number of shares.

Another condition was that when the stock passed into the ownership of petitioner he could not assign or pledge or otherwise dispose of it until a note given by petitioner to the Syracuse Trust Company and endorsed by Durston had been paid in full or until Durston had otherwise been relieved of all obligation thereon, with the exception that they could be assigned or pledged at any time as security for the payment of the note or of any obligation of the Durston Gear Corporation or otherwise for the benefit of said corporation.

At the end of 1939 the corporation had reduced its $150,000 bank indebtedness a total of $20,000, and on January 20, 1940, Durston transferred to the petitioner 2032 shares of stock in accordance with the terms of the document of January 7, 1935. The petitioner, in ac-

cepting said shares of stock, wrote to Durston that he would retain the stock and would not assign or pledge or otherwise dispose of it until his note, which had been endorsed by Durston, had been paid in full or until Durston would otherwise be relieved of all obligations thereunder by reason of said endorsement. On December 20, 1943, after petitioner's note had been paid in full, Durston wrote petitioner releasing him from all limitations "upon the free ownership and use of the aforesaid stock."

The petitioner testified that he did not give Durston the $1 consideration mentioned in the document of January 7, 1935, nor did he give him any other money or any property or render any services therefor. Neither party called Durston as a witness and the Court was not advised why he was not called. From the record made in this case, the document executed by Durston for all we know may have been executed at the insistence of the Trust Company. If that were so, Durston by no stretch of the imagination could be said to be making a gift to the petitioner. The testimony of petitioner that he gave no consideration to Durston for the stock was a mere conclusion of the witness. Even though oral testimony may be "undisputed," it may not from all the evidence in the case constitute "indisputable evidence." *Slayton* v. *Commissioner* (C. A. 1, 1935), 76 F. 2d 497, 499, certiorari denied, 296 U. S. 586.

It seems clear that donative intent on the part of Durston was lacking. It also seems clear that he received an adequate consideration from petitioner in that his personal indebtedness was to be reduced, and was in fact reduced, through the services petitioner rendered to the corporation. We said in *Estate of Monroe D. Anderson*, 8 T. C. 706 (1947), at page 717:

It is quite true that in *Wemyss* the Supreme Court held that Congress in section 503 had dispensed with the subjective test of donative intent and substituted the more workable external or objective test of whether the consideration for the transfer is full and adequate in money or money's worth. It must not be overlooked, however, that at the same time the Court was careful to point out that genuine business transactions—"business transactions within the meaning of ordinary speech"—are not within the scope of the gift tax. Citing Treasury Regulations 79 (1936 Ed.), art. 8, it said that:

* * * the Treasury Regulations make clear that no genuine business transaction comes within the purport of the gift tax by excluding "a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent)." * * * Thus on finding that a transfer in the circumstances of a particular case is not made in the ordinary course of business, the transfer becomes subject to the gift tax to the extent that it is not made "for an adequate and full consideration in money or money's worth."

We, therefore, conclude that the transaction here was a transfer of property made in the ordinary course of business, it was bona fide,

at arm's length, and free from any donative intent. Petitioner acquired said shares of stock for an adequate consideration.

There remains for our consideration the basis of said shares of stock to be used in computing gain or loss. The 1935 agreement plus the two letters of January 20, 1940 and December 20, 1943, when read as a whole, show that petitioner was not entitled to the stock until some indebtedness of the corporation to the bank had been reduced. This first occurred at the end of 1939 and Durston handed over the stock on January 20, 1940. It is true that petitioner received the stock at that time subject to certain limitations and petitioner cites *Fred C. Hall*, 15 T. C. 195 (1950) for the proposition that, since such restrictions were not lifted until his personal indebtedness had been discharged and he had received the letter of December 20, 1943, from Durston removing such restrictions, he is entitled to use the fair market value of such stock as of December 20, 1943, when he received the free and unrestricted use thereof. In the *Hall* case, the taxpayer entered into an employment contract with a corporation in November of 1942. He agreed to render services to it during the years 1943 and 1944. As part of his compensation the corporation issued two certificates of stock in his name, each for 25 shares. He endorsed the certificates in blank and gave them to the treasurer of the corporation. Upon the satisfactory performance of the required services and pursuant to an order of the board of directors, the treasurer was to deliver one of the share certificates to the taxpayer at the end of each of the years 1943 and 1944. This Court held that the fair market value of the 25 shares was includible in the taxpayer's income for each of the years 1943 and 1944, in which years they were delivered to him without restriction in consideration of services performed. That is not this case. Here, the petitioner actually received the stock in 1940. Presumably, he was entitled to vote it, and, if any dividends had been earned and paid by the corporation in that year, he would have been entitled to his share. The only restrictions remaining, and which petitioner agreed to by his letter of January 20, 1940, were that he would not assign or pledge or otherwise dispose of the stock until his personal note to the bank had been paid in full or until Durston had otherwise been relieved of all obligation thereunder. Cf. *Luther Bonham*, 33 B. T. A. 1100 (1936), affd. (C. A. 8, 1937), 89 F. 2d 725.

Since the shares of stock were not a gift to petitioner, their fair market value as of January 20, 1940, should have been included in petitioner's 1940 gross income. This is true no matter what the exact generating source of the income might have been. Section 22 (a) of the Code defines gross income to include, among other things, "gains or profits and income derived from any source whatever." If they had been so included in his 1940 income, such fair market value would have been the basis to be used in computing his gain or loss in 1944

when he sold them. *Commissioner* v. *Farren* (C. A. 10, 1936), 82 F. 2d 141; *Continental Oil Co.* v. *Jones* (C. A. 10, 1949), 177 F. 2d 508. Since respondent has predicated his deficiency upon the allowance of $2 per share market value on the stock, there is no occasion for the Court to reexamine its general rule that an item of income cannot be converted into a capital asset, having a cost basis, until it is first taken into income. See *Ruth B. Rains*, 38 B. T. A. 1189 (1938); and cf. *Ross* v. *Commissioner* (C. A. 1, 1948), 169 F. 2d 483, and *Bennet* v. *Helvering* (C. A. 2, 1943), 137 F. 2d 537. We are without jurisdiction to determine a deficiency in excess of the amount determined by respondent.

*Decision will be entered for respondent.*