NORTHWESTERN MOTOR CAR CO. v. COMMISSIONER OF INTERNAL REVENUE.
No. 4354.

Circuit Court of Appeals, Seventh Circuit.
Dec. 3, 1930.

Maurice Weinstein, of Milwaukee, Wis. (Robert Ash and T. J. Reilly, both of Washington, D. C., of counsel), for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and F. Edward Mitchell, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and De Witt M. Evans, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before ALSCHULER and EVANS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Petitioner seeks to avoid income and profit taxes of $10,540.74 and $6,568.75 assessed for the respective years 1920 and 1921, approved by the Board of Tax Appeals July 19, 1929. To justify such relief, petitioner relies upon the contention that, in computing its taxes for the years mentioned, it was entitled to include in its invested capital, first, $45,000 entered upon its books as capital represented by a Ford automobile dealer's contract; and, second, $120,000 represented by noninterest-bearing demand notes given in payment of capital stock in petitioner and its subsidiary corporation, Northwestern Finance Company. If these items are allowable as invested capital, the assessments complained of cannot be sustained.

On August 25, 1916, L. A. Snetcamp and Fred Bodenhagen, Jr., organized petitioner corporation with a capital stock of $5,000. Some time in the same year Snetcamp received from the Ford Company the agency contract mentioned, for which he paid nothing. On June 13, 1918, the company increased its capital stock to $50,000 and issued to Snetcamp and Bodenhagen certificates for the capital stock representing the increase, $45,000, and entered upon its books as an asset in the sum of $45,000 the agency contract mentioned. There is substantial evidence to support the finding of the Board of Tax Appeals to the effect that the contract was acquired by the assignor without cost to him and that it was assigned to the corporation subsequent to March 3, 1917. The resolution of the corporation in that respect is as follows:

"Whereas, it appears to the stockholders that the value of said contract so offered to be sold is at least $45,000.00, and by consent of all the stockholders, it appears to be necessary for the business of the corporation that the said offer be accepted. Now, therefore, be it resolved, that the Board of Directors of the Northwestern Motor Car Company be and they are hereby authorized and empowered, in their discretion to purchase the contract so offered to be sold for the said price, and to issue stock for the payment thereof in the said amount."

Section 331 of the Revenue Act of 1918 (40 Stat. 1095) provides, among other matters, that, after March 3, 1917, under situations existing at the time of the organization of this corporation and of its said increase in capital stock, any asset transferred or received from a previous owner, not a corporation, shall for the purpose of determining invested capital be taken at its cost of acquisition to the previous owner.

As we are of the opinion that the evidence sustained the findings of the Board in this respect, in view of the rule that those findings are prima facie correct (Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184), it follows from the statute that the elimination of the item of $45,000 from petitioner's invested capital was correct. The contract cost the assignors nothing; it was assigned to petitioner subsequent to March 3, 1917. Consequently no credit for invested capital on account thereof could stand, and the respondent rightfully refused such allowance.

The notes for $100,000, signed by Snetcamp and Bodenhagen and delivered to the corporation for an equal amount of capital stock on June 23, 1919, when the corporation's capital was increased from $50,000 to $150,000, were payable upon demand and bore no interest. The assets then consisted of the Ford contract carried on the books at $45,000, the said notes for $100,000, and other assets of the value of $15,495.51. An execution creditor of the corporation would have had recourse only to these items. Snetcamp, according to the evidence, had assets in addition to his interest in the company of approximately $12,000. Whether Bodenhagen, Jr., had any estate of value is not disclosed. Obviously the notes were worth in their present value only what the company's assets over its liabilities were worth plus the worth of the estates of Snetcamp and Bodenhagen, Jr., and no more. The Ford contract could be canceled upon thirty days' notice, and had

no tangible value. Such value as it might have would grow out of such future prosperity of the corporation as might develop. The notes likewise, as to anything over the $15,495.51 and Snetcamp's and Bodenhagen's property, were of value only as the company's future prosperity should make them valuable. The property back of the notes, other than the tangible assets of the company and the property of Snetcamp and Bodenhagen, Jr., was only such as might be possibly or probably resultant from future operations. Invested capital differs from credit and hopeful future in that it may be levied upon by creditors, and we know of no basis for treating promises to pay as invested capital beyond what can be actually realized thereupon, no matter how hopeful of continued prosperity the makers may be. The regulations of the Internal Revenue Department (article 833 of Reg. 62) rightfully limit promissory notes received from stock as invested capital to the actual cash value thereof.

The notes were never paid. Part payment of about 30 per cent. thereof was made in later years. They and the stock represented thereby were, in 1924, when Snetcamp purchased Bodenhagen's interest in the corporation, canceled. They were never used as collateral. They contributed nothing to the working capital of the corporation. Though a banker testified that he considered the notes good, he admitted upon cross-examination that, had he known that the business of the corporation was based upon an agency contract that might be canceled at any time upon thirty days' notice of the desire so to do upon the part of the Ford Company, he would not have had the same opinion. It appears further also that he based his original statement upon the assumption that the elder Bodenhagen, father of the stockholder Bodenhagen, was "behind the company." Yet there is no evidence of such fact. The party mentioned did not indorse or guarantee the notes or any of the liabilities of the corporation.

Section 833 of Regulation 62 also provides that such notes may not be considered as invested capital if they are conditional as to payment. The circumstances in the record are such as to give substantial support to respondent's finding that the notes were of such character.

In view of these facts, the respondent rightfully refused to attribute to the notes mentioned any of the qualities of invested capital at the time they were received, and gave credit only for such payments as were thereafter made thereon.

In 1920 Snetcamp and Bodenhagen organized the Northwestern Finance Company with a capital stock of $20,000 and paid for the latter with notes similar in all respects to those already mentioned, in the sum of $20,000. The two corporations filed joint tax returns. Everything we have said applies with equal force to these notes. The respondent properly refused to ascribe to them any of the attributes of invested capital except as to the payments actually thereafter made thereon.

As we find no error, the order of the Board of Tax Appeals is hereby, at the costs of petitioner, affirmed.