## PLANTERS' OPERATING CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 8789.

Circuit Court of Appeals, Eighth Circuit.
Jan. 25, 1932.

Phil D. Morelock, of Kansas City, Mo. (Perry W. Shrader, of Kansas City, Mo., Dudley Doolittle, of Strong, Kan., Llewellyn A. Luce, of Washington, D. C., and Walsh & Aylward and Shouse, Doolittle, Morelock & Shrader, all of Kansas City, Mo., on the brief), for appellant.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Dean P. Kimball, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before VAN VALKENBURGH, BOOTH, and GARDNER, Circuit Judges.

BOOTH, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals which affirmed the holding of the Commissioner of Internal Revenue in refusing to assign any value to a lease of certain hotel property in St. Louis, Mo.

The case involves income and profits taxes for the years 1919 and 1920, and income taxes for the years 1919 to 1922.

The main undisputed facts are briefly as follows: In 1918, the Planters' Operating

Company, the petitioner, a corporation of Missouri, acquired a lease on the Planters' Hotel in the city of St. Louis. The lease had been made by the owner, the Commonwealth Realty & Hotel Company, to Theodore B. Baker in August, 1918; and in November, 1918, Baker assigned the same to the petitioner for $200,000 par value of stock in petitioner corporation. In November, 1922, the owner of the property and the petitioner entered into an agreement by which the lease was canceled and the possession of the property returned by the petitioner to the owner; and, in consideration thereof, the Commonwealth Realty & Hotel Company, the owner, paid to the petitioner the sum of $200,000.

The Commissioner of Internal Revenue, in computing the petitioner's tax liability for 1922, counted the whole sum as profit, taking the position that the lease had cost the petitioner nothing, and that it had no value when acquired. He also allowed the petitioner no deduction for exhaustion of the leasehold during the taxable years 1919, 1920, 1921, and 1922.

The relevant statutes, so far as here material, read as follows:

Revenue Act of 1918, c. 18, 40 Stat. 1057, 1077.

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence."

Revenue Act of 1921, c. 136, 42 Stat. 227, 229.

"Sec. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property; except that— * * *."

Section 234 (a) (7) of the Revenue Act of 1921 (42 Stat. 255) contains the same provision as section 234 (a) (7) of the Revenue Act of 1918, above quoted.

If the lease had cost the petitioner any amount, then, under the law, the profit would be the difference between the cost of the lease and the amount received on the sale or cancellation thereof; and, further, if the lease had cost the petitioner any amount, then this amount should be allowed as the basis for determining the annual amortization allowance on the leasehold for each of the years that it was held by the petitioner.

The petitioner claimed an allowance for the exhaustion of this lease, based upon a value of $200,000 as of November 12, 1918, the date of acquisition thereof. Inasmuch as the lease ran for ten years, the petitioner claimed that one-tenth of $200,000 was a reasonable allowance for the exhaustion, to be deducted each year upon petitioner's tax return. Petitioner also claimed the valuation of $200,000 for the leasehold as the basis for determining whether any gain or loss resulted from the $200,000 consideration received during the year 1922 for the relinquishment of the lease.

The Commissioner disallowed both claims. The Board of Tax Appeals affirmed the ruling.

The cost of the lease to petitioner was $200,000 par value of its stock. It does not appear from the record that the stock had a readily ascertainable market value. The Commissioner of Internal Revenue therefore apparently undertook to determine its value by determining the value of the lease. In his letter dated February 26, 1925, stating a deficiency, he says: "The action of the Revenue Agent has been sustained in a ruling of the Commissioner which states that no value should be assigned to the leasehold for depreciation purposes or as a basis for the computation of the profits realized upon its sale in 1922."

This same method was followed by petitioner and respondent before the Board of Tax Appeals; so that the real question determined by that Board was whether the lease, at the time of its acquirement by petitioner, had any fair market value. The Board of Tax Appeals found that it had not.

It is well established:

(1) That the findings of the Commissioner are prima facie correct, and the burden is on petitioner to produce evidence to overthrow them. Brown v. Commissioner (C. C. A.) 22 F.(2d) 797; Austin Co. v. Commissioner (C. C. A.) 35 F.(2d) 910; Taplin v. Commissioner (C. C. A.) 41 F.(2d) 454; Williams v. Commissioner, 44 F.(2d) 467, 469 (C. C. A. 8), and cases cited; Nichols v. Commissioner (C. C. A.) 44 F.(2d) 157; Williams v. Commissioner (C. C. A.) 45 F.(2d) 61; Ruud Mfg. Co. v. Commissioner (C. C. A.) 45 F.(2d) 63; Louisville, etc., Co. v. Commissioner (C. C. A.) 47 F.(2d) 599.

(2) That where the decisive question in the case is whether a finding of the Board of Tax Appeals is justified, this court will not weigh the evidence but will sustain the finding, if supported by substantial evidence. Lucas v. Mercantile Tr. Co., 43 F.(2d) 39, 41 (C. C. A. 8), and cases cited; Powers Mfg. Co. v. Commissioner, 34 F.(2d) 255 (C. C. A. 8), and cases cited.

(3) That it is reversible error for the Board of Tax Appeals to disregard competent relevant testimony when it is not contradicted. Chicago, etc., Co. v. Blair (C. C. A.) 20 F.(2d) 10; Boggs & Buhl v. Commissioner (C. C. A.) 34 F.(2d) 859; Citrus Soap Co. v. Lucas (C. C. A.) 42 F.(2d) 372; Pittsburgh Hotels Co. v. Commissioner (C. C. A.) 43 F.(2d) 345; Dempster, etc., Co. v. Burnet (App. D. C.) 46 F.(2d) 604; Conrad & Co. v. Commissioner (C. C. A.) 50 F.(2d) 576.

The petitioner assumed the burden of proof and introduced evidence before the Board of Tax Appeals. That evidence tended to show, and it was largely uncontradicted, the following facts: The petitioner was incorporated under the laws of the state of Missouri in September, 1918, with an authorized capital of $250,000 par value; $30,000 of this was issued for cash; and $200,000 for the lease which it took by assignment from Baker. The lease ran for ten years to Baker as lessee and covered the property in St. Louis known as the Planters' Hotel. This hotel had been operated for almost one hundred years, and had a national reputation. In 1918, the Planters' Hotel Company, which was then operating the property, was unsuccessful and surrendered its lease by agreement with the owner, the Commonwealth Realty & Hotel Company. The owners of the property then operated the hotel for a short period, but without much success, for the reason that they were not experienced in that line of business. They began looking for a person of suitable financial responsibility and experience to operate the hotel, and who would also put his own capital into a rehabilitation of the property. They decided on Mr. Baker, and a lease was made August 29, 1918. Among its provisions were the following: The rent was to be 10 per cent. of the gross receipts, with a guaranteed minimum of $55,000 for the first 2 years, and $65,000 for the succeeding years; by article 17, the lessee covenanted that he would spend of his own money during the first year $50,000 in betterments and improvements, and in renovating the furniture, etc.; by article 18, the lessee covenanted that he would further advance, within two and one-half years, not less than $50,000 nor more than $100,000, to be spent for betterments and improvements; this amount, however, to be repaid by the lessor with interest; by article 21 it was provided: "The Lessee shall have the right to assign this lease to a corporation to be organized under the laws of the State of Missouri, for the purpose of conducting a hotel business, the said corporation assuming all of the obligation of the Lessee."

Mr. Baker began operating the hotel, and on November 12, 1918, assigned the lease to the petitioner. In connection with the assignment of the lease, Baker and C. C. Nelson guaranteed to petitioner that the net profits earned by operation of said hotel would furnish sufficient funds to carry out the provisions of paragraphs 17 and 18 of said lease, and that if the net profits above mentioned should be insufficient to enable the Planters' Operating Company to fully comply with all of the terms of said paragraphs 17 and 18 in said lease, they would, at their own expense, pay any deficit on account thereof, and prevent a forfeiture of said lease for failure to comply with the terms of said lease in said paragraphs 17 and 18.

Petitioners took possession of the hotel property and operated the same until the fall of 1922. At that time the owner had an opportunity to sell the property. Accordingly, it entered into negotiations with petitioner for a cancellation of the lease and surrender of the property. These negotiations were successful, and the owner paid petitioner $200,000 for the cancellation and surrender.

On the hearing before the Board of Tax Appeals, petitioner introduced the testimony of three disinterested witnesses, experienced hotel managers, all of whom testified that there was value in the lease when it was acquired by petitioner in November, 1918, amounting to at least $200,000. They explained how they arrived at this conclusion. Their reasons were couched, not, perhaps, in technical scientific terms, but in the language of laymen. Their testimony was uncontradicted.

The Board of Tax Appeals gave no weight to this testimony because it considered that it was based upon an erroneous understanding by the witnesses of the real terms of the lease.

In this respect we think the Board of Tax Appeals erred. We find no basis in

the testimony of the witnesses for holding that they did not know and understand the terms of the lease. We think the testimony of these witnesses, who were qualified and experienced, should have been accorded weight, especially as the record does not disclose that the Board of Tax Appeals had any personal knowledge or experience on which to base a conclusion. Boggs & Buhl v. Commissioner, supra; Pittsburgh Hotels Co. v. Commissioner, supra; Nichols v. Commissioner, supra.

The witness Heiss testified as follows:

"Q. Are you familiar with the lease that was made August 29, 1918, by the owner of that building to Theodore B. Baker? A. Yes, sir. * * *

"Q. That lease is in evidence here, and it shows that the lessee was to pay ten per cent. of the gross receipts; that he guaranteed that the rental, on the basis of the first two years of the lease would not be less than $55,000, and thereafter not less than $65,000 per annum. In addition to that he was to expend, at his own expense, $50,000 in betterments on the furniture and building. A. The first year after the first year, or the first year?

"Q. The first year, and he also agreed to expend from $50,000 to $100,000 within two and a half years, which, however, was to be repaid to him by the landlord out of the rents that might be received in excess of the guaranteed rent; that was to be repaid to him in that way. Having that in mind, was that a favorable or an unfavorable lease to the lessee? A. Favorable.

"Q. If favorable, did that lease then have a value to the lessee at the time it was made? A. Yes, sir."

And later, on cross-examination:

"Q. Do you know whether or not this lease that Mr. Baker acquired, at the time he acquired it had any market value? Could he have sold that lease to somebody on the street? A. I think he could.

"Q. Would you, as a hotel man, be willing to have paid him something for it? A. Yes, I would. * * *

"Q. You understand that when he assigned this lease, whoever he assigned it to would have to assume those obligations. Assuming that those obligations were in that lease, would you have paid anything for that lease in August of 1918, when Mr. Baker acquired it? A. After he acquired it?

"Q. Yes. A. Yes, sir.

"Q. What do you think it was worth in the market, if it could have been sold on the market? A. I think it was worth a quarter of a million dollars."

There was also relevant evidence of the value of the lease in the price paid for the same. It was paid for in stock of the lessee company. There was evidence that, shortly before the time when this stock was issued, other stock of the company had been sold at par for cash to the extent of $30,000. There was also evidence that the $200,000 stock which was issued for the lease had been subscribed for, and the subscription was withdrawn so that the stock might be issued in payment for the lease.

█ It is to be noted that the purchase of the lease by the petitioner was approved both by the board of directors and by the stockholders of petitioner. It should be further noted that section 8, article 12, of the Constitution of Missouri and section 9740 of Revised Statutes of Missouri, 1919, both plainly contemplate that stock of a corporation should be issued only for something having value, as cash, labor, or property.

Under those provisions, it has been held that, where a corporation issues stock in payment for property, the property must be the fair equivalent in value of the par value of the stock issued for it. Mudge v. Black, Sheridan & Wilson, 224 F. 919 (C. C. A. 8); Babbitt v. Read (C. C. A.) 236 F. 42; Van Cleve v. Berkey, 143 Mo. 109, 44 S. W. 743, 42 L. R. A. 593; Berry v. Rood, 168 Mo. 316, 67 S. W. 644; Raleigh Inv. Co. v. Cureton (Mo. App.) 232 S. W. 766.

The presumption is that the petitioner corporation acted lawfully instead of unlawfully in the issuance of its stock, and that the lease purchased had value.

█ The Board of Tax Appeals gives as a reason for holding that the lease acquired by petitioner had no value that a prior lessee, the Planters' Hotel Company, and also the owner had both been unsuccessful in operating the property. Inasmuch as the record does not disclose the terms of the lease to the prior lessee, and inasmuch as the record does disclose that the owner was without experience in operating a hotel, it is hard to see how these facts, taken singly or together, have any tendency to prove that the lease of 1918, acquired by petitioner, had no value.

Finally, it is to be noted that petitioner, in acquiring the lease from Baker, got a better bargain than Baker got from the owner of the property, inasmuch as the payments

to be made by the lessee, as provided in paragraphs 17 and 18 of the lease, were guaranteed to petitioner in case the net profits were not sufficient. This guarantee gave added value to the lease as acquired by petitioner.

Our conclusion is that the finding of the Board of Tax Appeals that the lease had no value when acquired by petitioner is contrary to the evidence and is not supported by any evidence; and, further, that it was error to reject the testimony of the expert witnesses offered by petitioner.

The decision of the Board of Tax Appeals is reversed, and the case remanded for further proceedings not inconsistent with the views herein expressed.