**NACHOD & UNITED STATES SIGNAL CO. v. HELVERING, Commissioner of Internal Revenue.**

**No. 6487.**

Circuit Court of Appeals, Sixth Circuit.

Dec. 14, 1934.

C. R. McAtee, of Washington, D. C. (Mason, Spalding & McAtee, of Washington, D. C., on the brief), for petitioner.

Helen Carloss, of Washington, D. C. (Sewall Key, J. Louis Monarch, and S. Dee Hanson, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

This review involves the petitioner's income taxes for the calendar years 1923 to 1926, inclusive. The sole issue before the Board was whether or not the respondent erred in disallowing deductions from gross income on account of the exhaustion of value of a group of patents owned by the taxpayer. The determinations of the respondent were approved, and the taxpayer seeks review of the Board's decision.

We are met at the outset of the case by the respondent's motion for an affirmance of the decision on the principle of res judicata. The order of redetermination in the present case was entered May 10, 1932. Under the statute then applicable, section 1001 (a) of the Revenue Act of 1926 (26 USCA § 1224 (a), the taxpayer had six months within which to file its petition for review to this court, which it did on November 9, 1932. Meanwhile a petition to review the respondent's determination of taxes for the year 1927 came on for hearing before the Board of Tax Appeals, involving a claim for exhaustion of the same patents, and was decided adversely to the taxpayer on July 11, 1932. To review the second decision of the Board it was necessary for the taxpayer to file his petition for review in this court within three months of that date by reason of the amendment to section 1001 (a) of the Revenue Act of 1926 incorporated in the corresponding section of the Revenue Act of 1932, effective June 6, 1932 (26 USCA § 1224 (a). No petition to review the second decision of the Board was filed, and it became final on October 11, 1932.

We have presented to us, therefore, the rather novel question as to whether the decision of an administrative tribunal, inferior to this court by reason of our statutory right of review, bars our review of its earlier decisión even though the latter could not have been pleaded as res judicata at the first hearing because not then made. It is settled by Tait v. Western Maryland Railway Co., 289 U. S. 620, 53 S. Ct. 706, 77 L. Ed. 1405, that the doctrine of res judicata applies to cases in the courts under the tax laws, and that, where the parties are the same and the question identical, the fact that different tax years are involved will not prevent its application. It is also settled (Hart Steel Co. v. Railway Supply Co., 244 U. S. 294, 37 S. Ct. 506, 61 L. Ed. 1148), that a decision of one court in a case involving the same parties and the same subject-matter may be interposed in another court of co-ordinate jurisdiction, even though the latter first acquired jurisdiction of the controversy, and that a motion for affirmance seasonably made to the latter, supported by proofs establishing identity of subject-matter and privity of parties, is a proper means of raising the defense of res judicata therein. These cases, however, do not reach the precise problem involved. Passing the question as to whether the Board of Tax Appeals acts to such extent judicially as to give its decisions the binding force required by the doctrine of res judicata, we have a case where two controversies, identical in respect to parties and subject-matter, were contemporaneously pending before the Board of Tax Appeals. When the second decision was made, a review of the first decision had not yet been foreclosed. For all that appears, the two cases could well have been consolidated and tried as one. There was no acceptance of the first decision as final. It is rather startling doctrine that a later decision can operate retroactively to bar an earlier one, or that a statutory right to review can be defeated by an inferior tribunal deciding the same case twice, and we have been cited to no authority sustaining it.

Res judicata is defined (Baldwin v. Iowa State Traveling Men's Association, 283 U. S. 522, 51 S. Ct. 517, 518, 75 L. Ed. 1244) as merely a rule of public policy designed to prevent the reopening of questions which have been decided by a court of competent jurisdiction. "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties." The present situation does not come within the rule thus interpreted. The litigation is not yet at an end. There is as yet no matter forever settled between the parties, no result of contest which the parties have accepted and by which they must abide. We cannot think that reasons of public policy out of which the doctrine arose require its application here. The motion for affirmance of the decision is denied.

We pass then to a consideration of the issues raised by the petition. The petitioner is a corporation organized December 1, 1913. Its entire capital stock of $100,000.00 was issued to Carl P. Nachod, who had been engaged in the manufacture and sale of signal devices invented by him for use upon electric railroads. His assets taken over by the petitioner embraced a machine shop, tools

and dies, patents and patent applications, contracts, and good will. His tangible assets had a book value of $18,712.22. The balance of the petitioner's stock, of the par value of $81,287.78, was issued in consideration for intangibles, of which patents and patent rights were the most important. In 1914 the petitioner sustained an operating loss of almost $5,000, and in 1915 of approximately $1,000. Thereafter, during the years 1916 to 1928, inclusive, the operation of the business resulted in total earnings of $435,925, out of which dividends to the extent of $174,000 were paid, the first in 1918 and the remainder in the years 1920 to 1928, inclusive.

In 1914 Nachod, for the purpose of obtaining additional working capital, transferred 245 shares of his stock to Bell, a promoter, for services in that connection. Thereafter the Augustus-Stewart syndicate acquired 500 shares of the petitioner's stock. It paid Bell $1,250 for his 245 shares, obtained 15 shares from Nachod, and for the remaining 240 shares of treasury stock agreed to pay the petitioner's indebtedness of $6,000 to $7,000 to the Hall Switch & Signal Company, with which the petitioner had a manufacturing contract to take over the Hall Company's tools and dies, amounting to about $5,000 to furnish office space, salesmen, and executive officers for the petitioner, and to furnish the capital necessary to operate the business.

The petitioner contends that the value of its patents and patent rights when acquired on December 1, 1913, was not less than $135,000. It relies upon evidence of five expert witnesses, who fixed their value at sums ranging from $100,000 to $170,000. It also relies upon the success of its business based upon the patents in the years 1918 to 1928, and the value put upon them by Nachod at the time of sale. The Board in its memorandum opinion reciting the facts discarded the opinion evidence. Its reasons for so doing were the lack of qualification of the witnesses to express opinion, a failure to show that their valuations were based upon knowledge of facts as they existed or could reasonably be anticipated at the basic date, a failure to show they were not the result of retrospective appraisals made in the light of later earnings, and their inconsistency with other testimony in the case. No independent knowledge of the Board as to these valuations was relied upon. Based upon the sale of the Bell stock, upon lack of substantial consideration for the sale of the treasury stock to the Augustus-Stewart Company, upon capital stock returns of the petitioner in the years 1916 to 1925, showing the petitioner had claimed no value for its patents, the Board determined that the petitioner's stock had a value as of December 1, 1913, not in excess of $5 per share, that this value was sufficiently represented by the value of the petitioner's physical assets and intangibles other than patents, and that nothing more than a speculative or nominal value could be assigned to the patents as of the critical date. On the basis of its findings the Board sustained the respondent in disallowing the claimed deductions, and this review followed.

We have presented to us the familiar question as to whether the evidence before the Board was legally sufficient to sustain its findings, fully discussed by this court in Tracy v. Commissioner of Internal Revenue, 53 F.(2d) 575, and other cases. It is clear from the reasoning of the memorandum opinion that the opinion evidence submitted by the petitioner was completely disregarded. It is true that such testimony, though often helpful, is not binding upon the Board to the extent that it is obliged to follow it if contrary to the judgment of its members. Nevertheless in every case the question must remain whether the value fixed by the Board is arbitrary and unsupported by substantial evidence, or represents a judicial determination reasonably founded upon evidence before it. Grand Rapids Store Equipment Corp. v. Commissioner, 59 F.(2d) 915 (C. C. A. 6). While the Board as a general principle of law may reject expert testimony and reach a conclusion in accordance with its own knowledge, experience, and judgment, it must itself have knowledge of the subject-matter and experience with it. Pittsburgh Hotels Co. v. Commissioner of Internal Revenue, 43 F.(2d) 345 (C. C. A. 3). It cannot arbitrarily disregard all affirmative and positive testimony applicable to value in a particular case. Nor can it rely wholly upon the presumption of correctness that attaches to the findings of the Commissioner. As we said in Rookwood Pottery Co. v. Commissioner, 45 F.(2d) 43, 45: "We see no reason why the taxpayer did not make its case when it put in proofs clearly and distinctly tending to show this value; and when the proofs so introduced remained unchallenged by contrary proofs or by destructive analysis, it was the duty of the commissioner to decide the issue in accordance with the proof then appearing before him; and it was, we think, the duty of the board to take the same view." Cf. Lunsford

v. Commissioner, 62 F.(2d) 740 (C. C. A. 6); Planters' Operating Co. v. Commissioner, 55 F.(2d) 583, 585 (C. C. A. 8).

If we are to apply these principles to the findings of the Board in the instant case, there is required a consideration of the reasons for rejecting and disregarding the testimony of the experts as to the value of the patents, in so far as those reasons were based on grounds other than its inconsistency with other testimony. It is not sufficient, it seems to us, to say that the value put upon the patents was speculative, or that it appeared to be the result of retrospective appraisals made in the light of the earnings of the petitioner in subsequent years. The appraisal of a patent not yet fully exploited is in a sense bound to be speculative. Its value is not, however, incapable of proof. "A patent is a thing unique. There can be no contemporaneous sales to express the market value of an invention that derives from its novelty its patentable quality. * * * The law will make the best appraisal that it can, summoning to its service whatever aids it can command. * * * At times the only evidence available may be that supplied by testimony of experts as to the state of the art, the character of the improvement, and the probable increase of efficiency or saving of expense." Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U. S. 689, 697, 53 S. Ct. 736, 739, 77 L. Ed. 1449, 88 A. L. R. 496. The Board not only ignored the substantial profits made by the petitioner during the period its business was confined wholly to the manufacture and sale of the patented devices, but rejected this period of gain as an element to be considered in the hypothetical situation submitted to the experts. We think this was erroneous. As was said in the Sinclair Refining Company Case, supra: "But a different situation is presented if years have gone by before the evidence is offered. Experience is then available to correct uncertain prophecy. Here is a book of wisdom that courts may not neglect. We find no rule of law that sets a clasp upon its pages, and forbids us to look within." We made a similar observation in H. H. Miller Industries Co. v. Commissioner, 61 F.(2d) 412, at 414: "We know of no authority to the effect that in determining value of intangible property having no fixed and determinable market value in 1913 the Board is obliged at a later date to close its mind to subsequent facts and circumstances demonstrating value, and none has been cited." See, also, American Chemical Paint Co. v. Commissioner of Internal Revenue, 66 F.(2d) 381 (C. C. A. 3).

Refusing to give consideration to the substantial profits of the petitioner based upon the patents during the years 1916 to 1928, inclusive, the Board nevertheless attached importance to the fact that the capital stock return of the petitioner in 1917, approximately four years after organization, showed no surplus or undivided profits earned, and no dividends paid. Experience in the one period was called upon to aid in correcting uncertain prophecy, but the illuminating experience in the other was repudiated. Nor did the Board give consideration to the fact that the earlier period was abnormal in that it included the war years, or that, notwithstanding a difficult period of development, the petitioner survived and achieved in the end commercial acceptance of its patented devices that was widespread and substantial. Moreover, in assigning a merely nominal value to the patents, on the ground that the determined stock value was sufficiently represented by the value of the petitioner's physical assets and other intangibles, the Board completely overlooked the fact that in an enterprise built entirely upon patented devices public recognition of its product, whether designated good will or patent value, is still essentially the same, and that tools, dies, and the like for the manufacture of patented devices may well be without substantial value divorced from the patents. Of a similar situation in the Rookwood Pottery Company Case, supra, this court said: "There was no doubt that these patents and this registered trade-mark existed in 1890, and that a very high reputation for the product had been established. The enterprise had become substantially self-supporting; and this does not happen *in this kind of manufacture until after the* product has made a place in the market. That kind of reputation and success is good will. The decision of the board assumes that there could have been no good will [patent value] if there had been no net profits. This is clearly wrong; many an enterprise has been, by its good will, sustained and carried through a non-profit period. It is thus clear to us that these intangibles had a real and substantial value. * * * The later success upon a large scale was doubtless built, in great degree, upon the foundation of these intangibles; it had little other base."

The Board held the sale of Bell's shares in 1914 to the Augustus-Stewart syndicate

to be a representative sale fixing the value of the Bell stock at approximately $5 per share. But there was substantial evidence that the sale of the Bell stock was a distress sale. The war had broken out, the petitioner was saddled with an improvident manufacturing contract, and Bell was desirous of relieving himself of responsibility so he might busy himself with war contracts. There was no market, and under the circumstances there could be no market for the stock. This evidence stood uncontradicted. Nor was there evidence the analysis of which could destroy the valuation of $50,000 put by the petitioner upon the consideration received for the treasury stock from the Augustus-Stewart syndicate. That syndicate spent $11,600 in canceling the Hall Switch Company contract and acquiring its tools and dies. It had agreed to advance all necessary capital, and did advance $50,000 in the first two years. It provided the petitioner with the necessary office space and contributed the services of its executive officers and of its sales organization. It is immaterial that a profitable manufacturing contract with one of its constituent companies was afterward substituted for the Hall contract. The syndicate took the risks and paid out its money, and the petitioner's ultimately great success demonstrated the value of what it received. That the syndicate also profited does not destroy the value of the arrangement to the petitioner.

Finally, there was consideration given by the Board to the petitioner's capital stock returns for the years 1916 to 1925, inclusive. These returns required statement of asset values as shown by the corporate books, and as claimed by the taxpayer for the purposes of capital stock determination. The returns showed no valuation for patents carried on the petitioner's books for 1916 and 1917, but a book value in 1918 of $88,236, successively reduced during subsequent years to a book value of $35,298.00 in 1925. The returns, however, claimed no value for patents during any of the years 1916 to 1925. But the capital stock tax is a special excise tax not measured like other taxes, but by the fair average value of the corporation's capital stock, and the method pursued in ascertaining such value is left to the sound judgment and the discretion of the Commissioner, subject to the obligation to take into consideration every relevant fact. Ray Consolidated Copper Co. v. United States, 268 U. S. 373, 45 S. Ct. 526, 69 L. Ed. 1003. The book value of the patents and its regular depreciation through successive years was fully disclosed by the petitioner's returns. The Commissioner could have made his own valuation. Whether the returns showed an item for good will does not appear, but it may well be that the value attributable to the patents may have been sufficiently reflected in the values returned for other intangibles. But, even if this is not so, the capital stock returns are of no probative force in an inquiry as to the value of the patents. As said in the Rookwood Pottery Company Case, supra: "The facts appearing as they do, it becomes of negligible importance that the directors had not continued to carry these intangibles as an asset on the books. That fact is no more important here than it would be if the corporation had paid for the intangibles in cash instead of in stock. The cutting out of this class of assets from the capital stock account was in accord with the best and most prudent practice of the time."

It appears to us, after a full consideration of the record, the public reception given to the patents, the substantial investment made to exploit them by Nachod and the petitioner, the value put upon them both by the petitioner and Nachod at the petitioner's organization, the substantial consideration paid by the Augustus-Stewart syndicate both in cash and obligations assumed for the stock, the survival of the company through years of development in an abnormal period, and its ultimately very marked success based wholly upon devices made under the patents, are positive and substantial evidence of real value. This evidence was not met by substantial controverting evidence, and is not in our opinion destroyed by analysis. We think the Board in failing to give regard to it acted arbitrarily and without evidence legally sufficient to sustain its findings. Under these circumstances the question is one of law (Rookwood Pottery Co. Case), and in its conclusion the Board erred.

The Board having made no findings of value as of December 1, 1913, it is not for us to say what the value was upon that date. Miller Industries Company v. Commissioner, supra. It follows that its order of redetermination is set aside, and the cause remanded, with instruction to proceed in conformity herewith.

ALLEN, Circuit Judge (dissenting).

I concur in the view that the doctrine of res judicata does not apply to an order of the Board of Tax Appeals. I cannot agree,

however, with the conclusion that the Board in its findings acted arbitrarily and without sufficient evidence, and that its order should be set aside. The Commissioner had disallowed the claimed depreciation of the patents because the evidence submitted to establish their valuation was insufficient. The Board approved the Commissioner's action for lack of evidence to show error.

The question presented was one of fact, namely, the value of the patents and patent rights when they were acquired by the petitioner on December 1, 1913. The conclusion of the Board falls within the class mentioned in Rookwood Pottery Co. v. Commissioner, 45 F.(2d) 43, at page 45 (C. C. A. 6). In spite of its negative form the decision had the character of a finding of fact. It was prima facie correct and should be sustained if supported by evidence. 26 USCA § 1218; Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918; Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289; Avery v. Commissioner, 22 F.(2d) 6, 55 A. L. R. 1277 (C. C. A. 5); Henderson Iron Works & Supply Co. v. Blair, Commissioner, 58 App. D. C. 114, 25 F.(2d) 538; Conklin-Zonne-Loomis Co. v. Commissioner, 29 F.(2d) 698 (C. C. A. 8); Northwestern Motor Car Co. v. Commissioner, 45 F.(2d) 357 (C. C. A. 7); Westlake Public Market v. Commissioner, 69 F.(2d) 291 (C. C. A. 9).

Evidence was presented supporting the petitioner's claim, but if there was substantial evidence to support the conclusion of the Board, it is immaterial so far as this court is concerned whether there is other evidence which, if believed, would support or require a contrary conclusion.

In my opinion there was substantial evidence to support the Board's conclusion.

Certain expert testimony on behalf of petitioner was given as to the value of these patents upon December 1, 1913. One witness testified that they were worth $170,000. All of the witnesses had or had previously had a close connection with the petitioner. Lack of factual knowledge as to the condition of the business upon December 1, 1913, and of accurate hypothetical assumption of facts led the Board to give little, if any, weight to this opinion testimony. It was not bound to follow it if contrary to the best judgment of the Board. Tracy v. Commissioner, 53 F.(2d) 575 (C. C. A. 6). In view of the record as to the condition of the business prior to December 1, 1913, and for the two years immediately following that date, this opinion evidence was contradicted by the historical facts. The petitioner stated under oath in its capital stock tax return that its stock was sold in 1914 at $2.50 per share.

Moreover, the sworn capital stock returns of the petitioner as to the value of the patents presented substantial evidence supporting the decision of the Board. While the returns set up a substantial book value for the patents, their fair value, as claimed in these sworn returns for the years from 1916 to 1925, with the exception of the year 1918, was not declared. In 1918 the fair value was stated to be "None."

The decision in Rookwood Pottery Co. v. Commissioner, supra, does not contradict this view. In that case no tax return of any kind was introduced in evidence, nor was the question of the weight of such sworn statements considered. There is, in my judgment, a material difference between not charging on the books an asset proved to exist, as in the Rookwood Case, and the making of a sworn statement required by law that the fair value of patents as claimed is "None." The Board did not err in taking these capital stock tax returns into consideration, and its order should be affirmed.