## C. M. HALL LAMP CO. v. UNITED STATES.

### No. 6845.

United States District Court
E. D. Michigan, S. D.

Feb. 23, 1951.

On Rehearing April 17, 1951.

Howell Van Auken, Detroit, Mich., for plaintiff.

Edward T. Kane, U. S. Atty. and Roger P. O'Connor, Asst. U. S. Atty., Detroit, Mich., for defendant.

KOSCINSKI, District Judge.

Plaintiff taxpayer seeks recovery of allegedly overpaid excess profits taxes for the year 1941. In its return for that year plaintiff included in its equity invested capital an item of $646,078.07, representing good will purchased from Edmund & Jones Corporation in 1926. Disallowance of this item by the Commissioner of Internal Revenue resulted in the present suit. Claim for the good will item has now been reduced by plaintiff to $525,478.77.

For purposes of brevity plaintiff will hereinafter be referred to as Hall and the Edmund & Jones Corporation as E & J.

Plaintiff contends that it acquired assets of E & J worth $2,207,296.27 and its good will for $525,478.77 based on its agreement to turn over its own stock which then had a value of a least $11⅔ a share and payment of cash. Defendant challenges plaintiff's right to claim any good will credit since the purchase agreement placed no value on the E & J good will; also, that the value of Hall stock delivered for purchase of the E & J business must be determined as of the date it was actually issued, and that after a lapse of years plaintiff should not be permitted to set up an item of good will nunc pro tunc and thereby increase the valuation of its assets for excess profits tax purposes.

Defendant filed a counter-claim but concedes that the statute of limitations prevents recovery thereon unless plaintiff prevails in its claim for refund, against which judgment the counter-claim can be offset. The counter-claim arises as a result of acquisition by plaintiff of bonds for which refunding bonds were later issued. Defendant contends that acceptance by plaintiff of the refunding bonds for the original bonds was tantamount to an exchange of properties different from each other, that the cost basis for determining the gain upon the sale of the refunding bonds is the value of the new bonds when acquired, and that plaintiff failed to properly report such gain in its 1941 return. Plaintiff denies that surrender of the original for the refunding bonds con-

stituted a new acquisition of property and argues that it represented a mere change in the evidence without any change in the substance of those securities.

The parties filed a stipulation of the facts which are not disputed. Testimony was received on other issues.

### Findings of Fact.

### Plaintiff's Claim.

1. On June 26, 1926 plaintiff entered into an agreement with E & J to purchase the "entire assets, business, and good will as a going concern" of E & J, as shown on the balance sheet attached to the agreement.

2. The consideration which E & J was to receive for this purchase, under the agreement, was payment of cash and delivery of Hall stock, as well as assumption by Hall of E & J obligations and liabilities. The amount of cash paid and stock delivered for such consideration, as well as the fact that the consideration paid was pursuant to the terms of the agreement, is undisputed. It is therefore deemed unnecessary to set up the full details of the agreement.

3. Other pertinent terms of the agreement covered redemption of E & J outstanding preferred stock at the earliest date permitted by its charter; deposit of sufficient funds by Hall for such purpose before notice of election to redeem contingent upon approval of E & J stockholders; payment by Hall of an extra cash dividend of $2.50 a share on its non-par common stock, at a date to be fixed and prior to consummation of the agreement, but in lieu thereof, receipt by Hall stockholders of a 20% stock dividend, at an election to be determined by the Hall board of directors; increase by Hall of its authorized non-par common stock from 200,000 to 500,000 shares to be available for general corporate purposes, including issuance of such stock for the acquisition of E & J property and business; treating the operation of the E & J business from January 1, 1926 to be for the account and benefit of Hall; consummation of the agreement as soon as practicable, but continuing payment of dividends on the stock of either company at usual rates, before consummation of the transaction, notwithstanding the agreement.

4. In view of the provision that the operations of E & J from and after January 1, 1926, shall be deemed to have been conducted and until date of transfer shall be conducted for the account and benefit of Hall, plaintiff claims losses in its 1926 income tax return for E & J losses from January 1, 1926, to June 27, 1926. However, upon a review of this return, the Internal Revenue Commissioner advised plaintiff that the affiliation status was changed to comprise the period from June 28, 1926 to December 31, 1926, within the purview of the 1926 Revenue Act. Plaintiff paid its federal 1926 income tax accordingly.

5. Pursuant to the provision for the $2.50 cash or 20% stock dividend to Hall stockholders, a stock dividend was declared and certificates therefor were issued on September 20, 1926.

6. The agreement was consummated on October 11, 1926, at which time undertakings under the agreement had been carried out except for the payment of a cash balance and delivery to E & J of the Hall stock. On that date Hall paid the balance of the cash and delivered the Hall stock to E & J, contemplated by the agreement.

7. The balance sheet of E & J, as of January 1, 1926, attached to the agreement, lists assets valued at $2,511,136.35, but shows no item of good will.

8. These assets were revalued by plaintiff as of January 1, 1926, at $2,390,931.36. Such revaluation likewise omits reference to any item of good will. According to the agreement, the value of the balance sheet assets was subject to correction for omission of the 1924–25 tax deficiency of E & J, subsequently determined at $4,647.81.

9. Parties hereto are in agreement, as appears by their stipulation of facts, that the balance sheet assets of E & J, as reflected on the E & J balance sheet of December 31, 1925, and as set up by plaintiff upon its own books of account, were fairly and adequately valued at the net figure of $2,390,931.36, and that this amount was subject to correction by deduction of the $4,647.81 tax deficiency and $178,987.28 E

& J losses during the first six-month period in 1926, leaving a balance of $2,207,296.27 as value of the E & J balance sheet assets at the time Hall acquired them.

10. It is also undisputed and is stipulated between the parties that Plaintiff turned over to E & J, in consideration for the purchase of its business, the sum of $866,108.37 in cash and 160,000 shares of Hall stock, pursuant to the agreement, as follows:

"a. Deposit with a bank on July 2, 1926 of sufficient cash and securities to redeem the E & J preferred stock. On plaintiff's instructions the bank converted the securities into cash and between July 22, 1926 and October 7, 1926 forwarded various amounts to a trust company for redemption of such preferred stock.

"b. Within the period following June 27, 1926 and on October 11, 1926 plaintiff paid additional cash up to the total amount of $866,107.37 and delivered additionally to E & J certificates for 160,000 shares of its own capital stock."

11. The price at which Hall stock was being traded on the stock exchange is agreed to have been $16 a share high and $14 low at the time the purchase agreement was made, and $9 a share high and $9 low at the time the 160,000 shares of Hall stock were delivered on October 11, 1926, to E & J.

12. The price of June 28, 1926, when the agreement was made, was on the basis of the 200,000 shares then outstanding and before the 20% stock dividend to Hall stockholders.

13. On October 11, 1926 plaintiff's board of directors specified the value of its outstanding shares of capital stock at $9.00 per share and revenue stamps were to be attached on that basis to the 160,000 shares transferred to E & J.

14. Plaintiff's books did not reflect any good will item or any value placed on good will acquired from E & J after acquisition of the E & J business.

## Counter-claim.

15. On November 2, 1929, plaintiff purchased $20,000 face value School District No. 8, Township of Hamtramck 4½% bonds for $19,730.94. The bonds were part of an authorized issue of $200,000 face value 4½% coupon bonds payable to bearer. They were dated October 1, 1917 and matured on October 1, 1932.

16. A default occurred in payment of the bonds due to impounding of the School District funds in a closed bank.

17. In August, 1932, the Board of Education of the City of Hamtramck, boundaries of which were coterminous with those of School District No. 8 and which became the successor of that district, authorized issuance of $93,000 face value 4½% refunding bonds of School District No. 8. Payment of the refunding bonds were to be made on the basis of $6,000.00 on October 1, 1933, and a like amount each succeeding year through October 1, 1944; thereafter $7,000 was to be paid on October 1st of each year through the year 1947.

18. Plaintiff received the refunding bonds in 1935; at that time their fair market value was $75 per $100 face value. This was also the fair market value of the original bonds on that date.

19. Plaintiff received a $6,000 payment, provided in the refunding bonds, on October 1, 1941. In its income tax return for that year it reported a gain of $80.72 based upon cost to it of the $6,000 face value of the original bonds.

20. On July 20, 1930 plaintiff purchased $5,000 face value City of Pontiac, City Hall 4½% bonds at a cost of $5,042.24. The bonds were part of an issue of $300,000 face value City Hall 4½% General Obligation Bonds payable to bearer. The bonds, dated August 1, 1928, were payable August 1, 1933.

21. A default in payment of these bonds occurred on or before August 1, 1933.

22. For its original bonds plaintiff received in 1934 refunding bonds, Series A, part of an issue of $5,358,750, dated March 1, 1934 and payable March 1, 1964 with 3% interest for the first two years, 4% for the next three years, and 4½% for the next 25 years. Provision was made for a sinking fund for retirement of these bonds.

23. The market value of the refunding bonds when received by plaintiff was $72

per $100 face value; this was also the value of the original bonds on that date.

24. In 1941 plaintiff received face value for $2,000 of its bonds and in its income tax return for that year reported a loss of $16.-90 based on cost to it of $2,000 face value of the original bonds.

### Conclusions of Law.

### Plaintiff's Claim.

1. Sec. 718 of the Internal Revenue Code, 26 U.S.C.A. § 718, allows inclusion in taxpayer's invested capital of the following: "Property paid in. Property (other than money) previously paid in * * * for stock * * *. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange."

2. Sec. 113 of the Code, 26 U.S.C.A. § 113, provides that the basis (unadjusted) of property for determining gain or loss shall be cost. Under this section plaintiff's basis for valuing assets acquired from E & J thus becomes plaintiff's own cost.

3. Excess Profits Tax Regulation 109, Sec. 30.718-1 deals with valuation of stock for which property was paid in:

"For the purpose of determining equity invested capital, the amount of property paid in is the unadjusted basis to the taxpayer for determining loss upon sale or exchange under the law applicable to the year for which the invested capital is being computed.

"If the basis to the taxpayer is cost, and stock was issued for the property, *the cost is the fair market value of such stock at the time of its issuance.* If the stock had no established market value at the time of the exchange, the fair market value of the assets of the company at that time should be determined and the liabilities deducted * * *." (Emphasis supplied)

4. Since Hall capital stock had a known market value on the date of issuance to E & J, the primary method of calculation in Regulation 109 can be used and resort need not be had to the alternative basis therein provided, involving direct appraisal of good will. Therefore the E & J good will, if any,

is to be priced on the basis of the value of plaintiff's 160,000 shares as issued to E & J.

5. Section 30.718-1 of Regulation 109 is unambiguous. It clearly and specifically provides that the cost is the fair market value of the stock at the time of its issuance. The 160,000 shares of Hall stock were issued to E & J on October 11, 1926 when delivery of the stock conferred on E & J stockholders all rights as stockholders of Hall. The fair market value of Hall stock on that date was $9 a share.

6. Nor could the 160,000 shares of Hall stock be valued at an earlier date, even in the absence of such regulation, for practical reasons. Execution of some of the provisions of the purchase agreement, referred to in paragraph 3 of the findings of fact, entailed delay and were factors which would necessarily affect the value of the Hall stock between the date of the contract and the date on which those provisions were finally carried out, and the stock was ultimately issued to E & J. The value with which Hall would part and E & J would receive, was not ascertainable until the entire transaction was completed.

7. Payment for good will must be bona fide. Lewis A. Crossett Co. v. United States, 50 F.2d 292, 72 Ct.Cl. 292. Plaintiff in its agreement of purchase bargained for the purchase of the assets and good will of E & J: "(1) That the Hall Company shall purchase, and the E & J Corporation shall sell and convey, the entire assets, business and good will as a going concern of the E & J Corporation." It paid cash and delivered stock in pursuance of such agreement which, valued either at the time the agreement was made or when it was finally consummated, exceeded the value of the assets alone and leads to the conclusion that a valuable consideration was paid bona fide for the good will.

8. Defendant relies on the case of Landesman-Hirschheimer Co. v. Commissioner, 44 F.2d 521, decided in our own circuit, which holds that to warrant the inclusion of good will, a valuation must have been placed upon it as of the time it was acquired, and such valuation must have consciously formed the consideration for, and

operated to discharge the subscriber's liability arising out of the issue of a specific amount of capital stock. This rule is clearly applicable to situations where stock is paid in for a group of assets, including good will, when it is obvious that all of such assets were purchased as a unit and no definite value assigned to the particular assets within the group. In the instant case the value placed on the good will is readily ascertainable. Plaintiff paid cash and stock for the assets and good will of E & J which it undertook to purchase; the value of the consideration it paid is known; the value of one of two items it purchased is also known, and it required but a simple mathematical computation to place a value on the remaining item it purchased.

9. It is true that plaintiff itself placed a higher value on the stock it paid in than permitted by the regulation above referred to. But this fact should not operate to defeat allowance of the good will at the lesser valuation but one within the purview of the regulations.

10. Defendant not only denies but affirmatively alleges that plaintiff paid the sum $866,108.37 in cash and delivered 160,-000 shares of its stock as consideration for the E & J business, and that such stock could only be valued at the date of its issuance, which was $9 a share on the date. It also concedes that Hall received balance sheet assets of E & J valued at $2,207,296.-27. The value of the consideration paid by Hall on October 11, 1926 when the 160,000 shares of Hall stock were issued, represented a total of $2,306,108.37 (cash of $866,108.37 and 160,000 shares of stock at $9 or $1,440,000). Deducting from this amount the value of the balance sheet assets of $2,207,296.27, the value which must be assigned to the good will it also contracted to purchase is $98,812.10.

11. Failure of E & J or Hall to set up the good will on their respective books of account is not significant. Nachod & United States Signal Company v. Helvering, 6 Cir., 74 F.2d 164. Omission of this type of asset from the books meets with generally accepted accounting principles.

12. Plaintiff is entitled to include good will valued at $98,812.10 in its equity invested capital for purposes of computing its excess profits taxes. Its excess profits tax for the year 1941 should be recomputed on the basis of inclusion of this item and it is entitled to judgment for any overpayment of excess profits taxes paid for that year on the basis of such recomputation.

### Counter-Claim.

13. All facts surrounding the exchange of the refunding for the original bonds must be considered and one circumstance alone is not determinative of the issue as to whether or not there was an exchange of properties different from each other. In City Bank Farmers Trust Co. v. Hoey, D.C., 52 F.Supp. 665, stress was placed on the fact that the bonds were in default; in Girard Trust Co. v. United States, D.C., 69 F.Supp. 874 in which bonds were not in default and where the refunding bonds were deemed different in kind from the original bond, the court remarks, 69 F. Supp. at page 876, that where the bonds exchanged are in default, the courts appear to be particularly loathe to sustain a tax on the exchange of defaulted for refunding bonds. In other cases, equal market value of the original bonds and refunding bonds at the time of the exchange is given importance. Motor Products Corp., v. Commissioner 47 B.T.A. 983, affirmed 6 Cir., 142 F.2d 449.

14. Upon surrender of the Hamtramck School District and City of Pontiac bonds plaintiff did not receive any property which had a value different from that which it held before surrender of the bonds. The debtor and creditor, amount of principal and market value of the original and new bonds, were the same. The original bonds were in default and the bondholders had no alternative but to accept the refunding bonds in view of the "freezing" in closed banks of funds available for payment of the original bonds. The few variations in the old and new bonds were not substantial enough to create an exchange of property different in kind.

15. The exchange of the original bonds for the refunding bonds was merely a continuance of old obligations.

16. Plaintiff's cost basis for reporting gain or loss upon sale of the bonds it now holds is cost to plaintiff of the original bonds.

17. Defendant is entitled to recover nothing against plaintiff under its counterclaim, either by way of offset against plaintiff or otherwise, and the counter-claim will be dismissed.

Judgment in accordance herewith to be presented on notice.

### On Petition for Rehearing.

This matter came on for hearing on plaintiff's motion to amend the court's conclusions of law. The court heard arguments of counsel on the motion in open court and it has fully considered citations of authorities submitted by both parties.

The court found that the effective date for determining value of plaintiff's stock as payment for good will acquired from the Edmunds & Jones Corporation was October 11, 1926 when certificates were delivered pursuant to an agreement providing for the transfer, and not June 28, 1927, when the contract was made. Plaintiff contends that the latter is the determinative date in assigning value to the stock.

The Internal Revenue Regulations discussed in the findings of fact and conclusions of law provide for valuation of stock paid for property as of the date of its issuance. Plaintiff urges that the stock was "issued" on the date when the agreement was made, although certificates were not delivered until October 11, 1926.

The only problem before the court at this time is the value of the stock paid for the good will item, and to arrive at the value it is necessary to determine date of "issuance" of the stock; contractual rights of the parties under their agreement of June 28, 1926 are not before the court.

The facts in this case do not lend support to plaintiff's contention that the stock was issued on June 28, 1926, when the agreement

was made. The agreement contemplates, among other things, purchase by plaintiff of the E & J Corporation; retirement of E & J preferred stock upon notice of election to redeem and retire such stock to be given to preferred stockholders; payment of a cash or stock dividend to plaintiff's stockholders —at the election of plaintiff's board of directors—prior to the consummation of the agreement; increase of plaintiff's authorized common stock; change of name of the plaintiff company (although it would appear that the change had never been made); change in personnel of management of the "reorganized" company consisting of persons recommended by boards of directors of the two companies which are parties to the agreement; payment by the "reorganized" company of stock and cash for the E & J Corporation business; undertaking by E & J Corporation to take all necessary proceedings to validly sell and convey its business to the "reorganized" company; approval of stockholders of the "reorganized" vendee corporation if such approval is required; and authorization of a bond issue by the "reorganized" company. Undertakings of both parties to the agreement were eventually carried out and stock of the plaintiff company, after acquisition of the E & J Corporation business, was delivered on October 11, 1926, pursuant to the agreement. On that date value of the stock, or consideration with which plaintiff parted, became ascertainable. Such value was $9 a share, being the market value as well as the value designated by plaintiff's board of directors when it attached revenue stamps on the basis of $9 a share to the stock so transferred.

"Issuance" of the stock, under the facts appearing in this case, occurred on October 11, 1926 and the E & J Corporation good will acquired by plaintiff, to be included in its equity invested capital for excess profits tax purposes, should be valued on the basis of consideration paid for it in cash and plaintiff's stock. Value of the stock on that date was conceded to be $9 a share.

This court finds no reason for amending its conclusions of law and plaintiff's motion to so amend the conclusions is denied.